STATE OF CONNECTICUT *v.* EDWIN SANCHEZ
(AC 24002)

Dranginis, West and McLachlan, Js.

Argued February 25—officially released August 24, 2004

*Kent Drager*, senior assistant public defender, with whom, on the brief, were *James Gorman* and *Graceann Pisano*, certified legal interns, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Kathleen E. McNamara*, senior assistant state's attorney, and *John J. Russotto*, assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Edwin Sanchez, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a[1] and conspiracy to commit murder in violation of General Statutes §§ 53a-48[2] and 53a-54a. The defendant claims that (1) the state improperly withheld exculpatory evidence, (2) the court improperly denied his motion for a judgment of acquittal because there was

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

insufficient evidence to support the conviction for conspiracy to commit murder, (3) the court improperly instructed the jury on conspiracy to commit murder and (4) the conspiracy conviction must be set aside because the state allowed the defendant's alleged coconspirator, Jose Pabon, to plead guilty to assault in the first degree. We affirm the judgment of the trial court.

The following facts were adduced at trial. Darence Delgado was murdered on May 2, 1995, on North Street in New Britain.[3] Prior to the murder, Jose Pabon was with the defendant on Willow Street, across the street from a basketball court where Delgado and Jay Vasquez were talking. Pabon was a neighbor of the defendant. That afternoon, the defendant asked Pabon to retrieve a gun that Vasquez had left at Pabon's house. After returning with the gun, Pabon noticed that Delgado was no longer at the basketball court. Pabon offered the gun to the defendant, but the defendant told him to hold on to it. The defendant then told Pabon to walk with him to the corner of North and Willow Streets.

When they arrived at the corner, the defendant told Pablon, "When I start shooting, you shoot." Turning onto North Street, they saw Vasquez and Delgado, who was sitting on a bicycle, approximately twenty-five feet away. The defendant approached them while Pabon remained at the corner. The defendant looked at Pabon and nodded his head. He then pulled out a black nine millimeter handgun, aimed it at Delgado's upper body and opened fire from close range. Delgado fell to the ground and the defendant continued to shoot him. The defendant turned around, looked at Pabon and spread his arms. Pabon pulled out the gun he had retrieved and fired four shots at Delgado. The defendant turned

---

[3] An autopsy revealed that Delgado died due to multiple gunshot wounds to his chest, left ear, neck, shoulder, buttocks and leg.

toward Delgado and again fired at him. The defendant and Pabon then ran from the scene and hid their guns.

A week or so after the shooting, Pabon saw Miguel Colon carrying the gun that the defendant had used to shoot Delgado. Pabon and Colon smashed it with hammers and wrenches, destroying all but the barrel of the gun. They wrapped the barrel in bags and buried it in Pabon's backyard. The police later seized that barrel. Forensic testing revealed that it was a nine millimeter barrel and that the intact nine millimeter bullet removed from Delgado's body during the autopsy was consistent with having been fired from this barrel.

On September 23, 1997, the defendant was charged by information with murder and conspiracy to commit murder. After a trial by jury, the defendant was convicted of both charges and sentenced to a total effective term of sixty years imprisonment. The defendant filed motions for acquittal and a new trial, which the court denied. This appeal followed.

I

The defendant claims that the state improperly withheld exculpatory evidence regarding the credibility and culpability of Pabon.[4] At trial, Pabon testified on behalf of the state. He testified that he personally had not been promised anything by the prosecution for his testimony and that he was hoping to be given consideration for

[4] The defendant seemingly is seeking another bite at this apple. On February 5, 2001, he filed a motion for rectification and augmentation of the trial court record in which he demanded an evidentiary hearing pursuant to *State v. Floyd*, 253 Conn. 700, 756 A.2d 799 (2000), to determine whether the state "failed in its constitutional duty to disclose exculpatory information." The court denied that motion. On July 1, 2002, the defendant filed a motion for review of that denial with the Supreme Court, where he had already commenced his appeal. By order dated September 19, 2002, the Supreme Court granted review but denied the relief requested, apparently determining that the trial court did not abuse its discretion in denying the motion and that the requested evidentiary hearing was unnecessary.

his cooperation. He also testified that his attorney told him he would be given consideration if he cooperated. A week after the defendant was sentenced, the murder and conspiracy to commit murder charges against Pabon were dismissed, and Pabon pleaded guilty to the charge of assault in the first degree.

Despite the denial of his request for an evidentiary hearing, the defendant argues that the record is nevertheless sufficient for our review of his claim. A central part of that record is the trial court's denial of his motion for rectification and augmentation of the record, in which the court addressed the claim now before us. In its memorandum of decision, the court concluded that "[t]here is no evidence that the prosecution failed to reveal a plea agreement, express or implied, between Pabon and/or his attorney and the state." The court also concluded that "the actions of the prosecutor appear to be no more than a proper exercise of prosecutorial discretion in the disposition of Pabon's case." We agree. On the basis of our review of the record, we conclude that there is no evidence that the prosecution improperly withheld exculpatory evidence regarding the credibility and culpability of Pabon.

II

The defendant next claims that the court improperly denied his motion for a judgment of acquittal because there was insufficient evidence to support his conviction for conspiracy to commit murder. He claims the evidence was insufficient to establish that he agreed with Pabon to murder Delgado or that Pabon had the specific intent to murder Delgado. We disagree.

In reviewing a sufficiency of the evidence claim, "[w]e first construe the evidence most favorably to upholding the defendant's conviction, then ask whether a jury, upon the facts so construed and the reasonable inferences that follow, could have found the elements of

conspiracy to commit murder proven beyond a reasonable doubt. . . . In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference." (Citation omitted.) *State* v. *Conde*, 67 Conn. App. 474, 490, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002).

To establish the crime of conspiracy to commit murder, the state must show that there was an agreement between two or more persons to cause the death of another person and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. *State* v. *Green*, 261 Conn. 653, 669, 804 A.2d 810 (2002). In addition, the state also must show that the conspirators intended to cause the death of another person. See *State* v. *Bell*, 68 Conn. App. 660, 669, 792 A.2d 891, cert. denied, 260 Conn. 921, 797 A.2d 518 (2002).

"The existence of a formal agreement between the parties need not be proved. It is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . . Because of the secret nature of a conspiracy, a conviction is usually based on circumstantial evidence. . . . The state need not prove that the defendant and a coconspirator shook hands, whispered in each other's ear, signed papers, or used any magic words such as we have an agreement." (Citations omitted; internal quotation marks omitted.) *State* v. *Crump*, 43 Conn. App. 252, 258, 683 A.2d 402, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996).

"[T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts."

(Internal quotation marks omitted.) *State* v. *Davis*, 68 Conn. App. 794, 799, 793 A.2d 1151, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002). Intent to murder may be inferred from a combination of factors, including retrieving a gun and then returning to shoot the victim; *State* v. *Tomasko*, 238 Conn. 253, 259, 681 A.2d 922 (1996); using a deadly weapon on the victim's body parts; id.; fleeing from the crime scene with a participant in the crime; *State* v. *Booth*, 250 Conn. 611, 653, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000); concealing evidence of involvement in the crime; *State* v. *Miller*, 69 Conn. App. 597, 609, 795 A.2d 611, cert. denied, 260 Conn. 939, 802 A.2d 91 (2002); and failing to summon medical assistance for the victim. *State* v. *Sivri*, 231 Conn. 115, 129, 646 A.2d 169 (1994).

The jury in this case heard evidence of concerted action between the defendant and Pabon prior to, during and after Delgado's murder. On the date of the murder, the defendant and Pabon were together across the street from the basketball court where Delgado was talking with Vasquez. The defendant asked Pabon to retrieve a gun, which Pabon did. Upon returning, the defendant told Pabon to hold on to the gun and to walk with him, which Pabon did. They proceeded to the corner of North and Willow Streets, where Delgado was sitting on a bicycle approximately twenty-five feet away. The defendant then told Pabon, "When I start shooting, you shoot." The defendant approached Delgado, looked back at Pabon and nodded his head. He then pulled out a black nine millimeter handgun, aimed it at Delgado and opened fire. The defendant then looked at Pabon and spread his arms. Pabon immediately pulled out the gun that he had retrieved and shot Delgado four times.[5] The defendant turned toward Del-

---

[5] The fact that Pabon shot Delgado in response to a mere gesture from the defendant supports our conclusion that the jury reasonably could have inferred that the defendant and Pabon conspired to murder Delgado.

gado and fired more shots at him. The defendant and Pabon fled the scene together without summoning medical assistance for the victim and hid their guns.

From those facts, the jury reasonably could have inferred that the defendant and Pabon agreed to cause the death of Delgado. Although the parties presented two different scenarios of the incident, the jury chose to accept the state's version and to reject the defendant's. In such cases, we defer to the jury's assessment of credibility. See *State* v. *Barber*, 64 Conn. App. 659, 666, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001). The jury also reasonably could have inferred that the defendant and Pabon intended to cause the death of Delgado. "In considering whether the evidence fairly supports a jury's finding of guilt, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Diaz*, 237 Conn. 518, 542, 679 A.2d 902 (1996).

We conclude that sufficient evidence existed to support the jury's conclusion that the defendant and Pabon agreed to murder Delgado and that they intended to cause the death of Delgado. Accordingly, the court properly denied the defendant's motion for acquittal. We further conclude that the defendant's corollary claim that a new trial is required because the court gave the jury a *Pinkerton*[6] instruction is likewise unavailing because it necessarily presumes that there was insufficient evidence to support the conspiracy conviction.

[6] See *Pinkerton* v. *United States*, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). Under the *Pinkerton* doctrine, "a conspirator may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy." (Internal quotation marks omitted.) *State* v. *Coltherst*, 263 Conn. 478, 491, 820 A.2d 1024 (2003).

## III

The defendant claims that the court improperly instructed the jury on conspiracy to commit murder. The defendant did not file a written request to charge and failed to object to the court's instructions. He now requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] We review the defendant's claim under *Golding* because the record is adequate for review and the claim is of constitutional magnitude.[8]

The standard of review for claims of instructional impropriety is well established. "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's

[7] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Internal quotation marks omitted.) *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

[8] "[A]n improper jury instruction as to an essential element of the crime charged may result in the violation of the defendant's due process right to a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Smith*, 70 Conn. App. 393, 398, 797 A.2d 1190, cert. denied, 261 Conn. 924, 806 A.2d 1063 (2002).

instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Coltherst,* 263 Conn. 478, 490, 820 A.2d 1024 (2003).

On appeal, the defendant claims that the court's charge on conspiracy to commit murder was improper in that it did not instruct the jury that it must find that Pabon possessed the specific intent to cause the death of Delgado.[9] We disagree.

Our review of the court's charge reveals that the jury was sufficiently instructed on the intent requirement. The charge explained that the state must prove beyond a reasonable doubt that the defendant "entered into an agreement with at least one other person to engage in conduct constituting the crime of murder." It instructed the jury that intent to cause the death of another person was part of the crime of murder and stated that the defendant may not be found guilty unless the state has proven that he had the specific intent to commit that crime. Moreover, the court's charge followed almost verbatim the model jury instructions found in J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. Rev. 2001) § 3.3, pp. 160–62.[10] Neither mentions the coconspirator's intent.[11] Read in its entirety, the charge sufficiently instructed the jury on the requisite

[9] The defendant makes no claim that he lacked the specific intent to cause the death of Delgado. In part II, we concluded that sufficient evidence existed from which the jury could infer that the defendant and Pabon possessed the specific intent to cause the death of Delgado.

[10] While not dispositive of the adequacy of the instruction, an instruction's uniformity with the model instructions is a relevant and persuasive factor in our analysis. See *State* v. *Coleman,* 83 Conn. App. 672, 691 n.12, 851 A.2d 329 (2004).

[11] The defendant has provided no authority for his assertion that, in addition to an instruction regarding the specific intent of the defendant, a conspiracy charge must also include an explicit instruction that the jury must find that the coconspirator possessed the intent to cause the death of the victim.

intent. We conclude that it is unlikely that the jury was misled simply because the charge lacked an explicit instruction that the jury also must find that Pabon possessed the intent to cause the death of Delgado. Accordingly, the defendant's claim fails *Golding*'s third prong.

## IV

The defendant's final claim is that the conspiracy conviction must be set aside because the state allowed Pabon to plead guilty to assault in the first degree. The defendant again seeks review of his unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 239–40. We review his claim because the record is adequate for review and it is of constitutional magnitude.

The defendant's claim is meritless. "One of the prosecutorial concessions that may be made in a plea agreement is the reduction of a charge to another charge with a lesser penalty or to a related offense." *Evans* v. *Commissioner of Correction*, 47 Conn. App. 773, 781, 709 A.2d 1136, cert. denied, 244 Conn. 921, 714 A.2d 5 (1998); see also *Szarwak* v. *Warden*, 167 Conn. 10, 18, 355 A.2d 49 (1974). The defendant would have us hold that a charged coconspirator must, in every instance, be prosecuted for that crime. We decline his invitation.

In his brief, the defendant asserts that it is well established that the crime of conspiracy is bilateral. We recently indicated otherwise. In *State* v. *Asberry*, 81 Conn. App. 44, 837 A.2d 885, cert. denied, 268 Conn. 904, 845 A.2d 408 (2004), we observed that "our Supreme Court seems to have backed away from a bright line distinction between unilateral and bilateral approaches to conspiracy law. . . . A fair reading of our Supreme Court's jurisprudence concerning the law of conspiracy compels the conclusion that the court now interprets our conspiracy statute broadly." (Citations omitted; internal quotation marks omitted.) Id., 54–55. Consequently, we held that "[i]t is legally irrele-

vant to the defendant's conviction that the state never charged" the defendant's coconspirator. Id., 56; see also *Crump* v. *Commissioner of Correction*, 68 Conn. App. 334, 340, 791 A.2d 628 (2002) (fact that petitioner's coconspirator was not charged with conspiracy does not void petitioner's conspiracy conviction).

Moreover, there is nothing in the record to support the defendant's brazen allegation that, prior to trial, the state had concluded that Pabon lacked the intent to murder. Throughout both the defendant's trial and Pabon's sentencing, the state maintained that Pabon harbored an intent to murder. The defendant has not demonstrated a clear constitutional violation. Accordingly, his claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.