### STATE OF CONNECTICUT *v.* ANGELO FABRICATORE
### (AC 23521)

Lavery, C. J., and McLachlan and Mihalakos, Js.

Argued October 25, 2004—officially released June 28, 2005

*Todd A. Bussert*, special public defender, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael A. Colombo, Jr.*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Angelo Fabricatore, appeals from the judgment of conviction, rendered after a jury trial, of assault in the third degree in violation of General Statutes § 53a-61[1] and breach of the peace in violation of General Statutes (Rev. to 2001) § 53a-181 (a) (1).[2] The defendant claims that the trial court improperly (1) denied his motion for a judgment of acquittal because there was insufficient evidence to support the conviction, (2) denied his request for a

---

[1] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person . . . ."

[2] General Statutes (Rev. to 2001) § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . . For purposes of this section, 'public place' means any area that is used or held out for use by the public whether owned or operated by public or private interests."

continuance, (3) commented on the credibility of the sole defense witness, (4) instructed the jury on the requirements of self-defense and (5) remanded the defendant into custody pending sentencing. We reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. On September 15, 2001, the victim, Felix Gonzales, and Laura Montanez and Raymond Vasquez were fishing at Harbor Drive Park in Stamford. While Gonzales and Vasquez were sitting on a bench, the defendant approached the two men from behind. The defendant grabbed Vasquez around the neck. Gonzales told the defendant to stop choking Vasquez, and a fight ensued. Several witnesses testified that the defendant "danced" around Gonzales with his fists raised.

Although it is not clear what was said or if there was yelling, the verdict allows us to assume that the jury found that the defendant hit Gonzales first. Gonzales, who fell to the ground after being hit by the defendant, sustained a broken nose, bruising and a lost tooth. The defendant received a cut on his lip. Gonzales was given a summons and was taken to a hospital for treatment. The defendant was arrested at the scene.

The defendant was charged with assault in the third degree in violation of § 53a-61 and breach of the peace in violation of § 53a-181 (a) (1). After a jury trial, the defendant was convicted of both charges. The defendant now appeals. Additional facts will be provided as necessary.

I

The defendant first claims that the court improperly denied his motion for a judgment of acquittal[3] because

---

[3] At the close of the state's case, the defendant moved for a judgment of acquittal, which was renewed at the close of the defense case and after the verdict.

there was insufficient evidence to support his conviction. Specifically, the defendant argues that there were several inconsistencies in the testimony of the state's witnesses, suggesting that there was insufficient evidence on which the jury reasonably could have found him guilty of either charge. The defendant also asserts that there was clear evidence of self-defense and, thus, he should have been acquitted of the assault charge. We disagree.

"In reviewing a sufficiency of the evidence claim, [w]e first construe the evidence most favorably to upholding the defendant's conviction, then ask whether a jury, upon the facts so construed and the reasonable inferences that follow, could have found the elements of [the crime] proven beyond a reasonable doubt. . . . In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference." (Internal quotation marks omitted.) *State* v. *Sanchez,* 84 Conn. App. 583, 587–88, 854 A.2d 778, cert. denied, 271 Conn. 929, 859 A.2d 585 (2004). "Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) *State* v. *Wright,* 62 Conn. App. 743, 749, 774 A.2d 1015, cert. denied, 256 Conn. 919, 774 A.2d 142 (2001).

To establish the crime of assault in the third degree, the state must show that the defendant intentionally or recklessly caused physical injury to another. To establish the crime of breach of the peace, the state must show that the defendant recklessly or intentionally caused inconvenience, annoyance or alarm by fighting in a public place. The jury in this case heard evidence that the defendant, on being confronted about his alleged assault against Vasquez, began fighting with

Gonzales. After "dancing" in circles around Gonzales, poised to fight, the defendant hit Gonzales, causing him to suffer serious physical injuries. There was no dispute that the event occurred in a public place.

From those facts, the jury reasonably could have inferred that the defendant intended to harm Gonzales and, in fact, did harm Gonzales during a fight at a public park. Despite testimony by the defense witness, the defendant's brother, Gary Fabricatore, that the defendant was acting in self-defense, the jury chose to accept the state's version of the facts and to reject the defendant's. "In such cases, we defer to the jury's assessment of credibility. . . . In considering whether the evidence fairly supports a jury's finding of guilt, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Sanchez*, supra, 84 Conn. App. 590.

We conclude that sufficient evidence existed to support the jury's conclusion that the defendant committed an assault and was guilty of breach of the peace. Accordingly, the court properly denied the defendant's motion for a judgment of acquittal.

## II

The defendant next claims that the court abused its discretion in denying his request for a continuance. The defendant asserts that the continuance was needed to locate an exculpatory witness, who could not be found prior to trial. The defendant contends, therefore, that his ability to defend himself was impaired and that he was denied a fair trial.

"[T]he matter of a continuance is traditionally within the discretion of the trial judge which will not be dis-

turbed absent a clear abuse. . . . It is not every denial of a request for a continuance that violates due process. . . . [T]he right of a defendant to a continuance is not absolute. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, 70 Conn. App. 807, 815–16, 800 A.2d 1218, cert. denied, 261 Conn. 930, 806 A.2d 1070 (2002). There are several factors "that the trial court may consider in exercising its discretion. The factors include the timeliness of the request for continuance; the *likely* length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; the defendant's personal responsibility for the timing of the request; [and] the likelihood that the denial would substantially impair the defendant's ability to defend himself . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 816. "[A]n appellate court should limit its assessment of the reasonableness of the trial court's exercise of its discretion to a consideration of those factors, on the record, that were presented to the trial court, or of which that court was aware, at the time of its ruling on the motion for a continuance." (Internal quotation marks omitted.) Id. Accordingly, in addressing the defendant's arguments, we also will address the relevant factors previously listed that the record before us discloses.

We conclude that the court did not abuse its discretion in denying the defendant's request for a continu-

ance. Although the defendant contends that the continuance was necessary to locate an exculpatory witness, he did not make his request for a two week continuance until March 27, 2002, at the opening date of his trial. The jury already had been selected, and witnesses had arrived to testify. The defendant could have made his request prior to jury selection. The court denied the defendant's request, stating that the defendant had one month before trial to find the witness. We agree with the court that the defendant had sufficient time to locate the witness. Furthermore, there is nothing to indicate that the defendant knew how to locate the missing witness or that a two week continuance would have been sufficient to locate the witness. Moreover, the defendant has not suggested that the exculpatory witness' testimony would have been more helpful than that of the defendant's brother, Gary Fabricatore, the sole defense witness. We conclude, therefore, that the defendant's second claim must fail.

## III

In his third claim, the defendant contends that he was deprived of his right to a fair trial because of the court's improper comments regarding the credibility of the sole defense witness, Gary Fabricatore. Although we agree with the defendant that the court's remarks were improper and do not condone such remarks, we nevertheless conclude that the defendant implicitly waived that claim.

The following additional facts are necessary for the resolution of the defendant's claim. During cross-examination by the prosecutor, Gary Fabricatore mentioned a previous breach of the peace case in which he and the defendant were involved. On redirect examination by defense counsel, when questioned about the resolution of the case, Gary Fabricatore explained that the case against him had been dismissed. The prosecutor

challenged Gary Fabricatore's representations on recross-examination.[4] When Gary Fabricatore repeated his contention that the charges against him had been dismissed, the court[5] interjected, stating that Gary Fabricatore was wrong and that he had been found guilty.[6]

The following day, before the jury was brought into the courtroom, the prosecutor explained to the court

[4] The prosecutor began by asking Gary Fabricatore about the resolution of the breach of the peace charge that Gary Fabricatore mentioned during cross-examination:

"[The Prosecutor:] Isn't it true, Mr. Fabricatore, that the breach of the peace [charge] wasn't dismissed? That you actually paid a fine for it? Isn't that true?

"[The Witness]: No, I didn't. My case got dismissed.

"[The Prosecutor:] You're sure about that?

"[The Witness]: Yes.

"[The Prosecutor:] So, the [Federal Bureau of Investigation (FBI)], if they reported that you paid a fine, the FBI would be wrong, isn't that correct?

"[The Witness]: When I was here, I think [Judge] Hickey was the judge and—

"The Court: Judge Hickey heard the case.

"[The Witness]: Yeah, right.

"The Court: Judge Hickey.

"[The Witness]: Yeah, I'm sorry. Judge Hickey.

"The Court: What happened?

"[The Witness]: Mine got dismissed, and my brother—

"The Court: No, it didn't. No. I think you were guilty.

"[The Prosecutor:] I have nothing further, Judge.

"[The Witness]: Oh, I don't know that. You'd have to go back to the records because I hear it as mine was—

"The Court: That's fine with me. But I am just telling you from my own recollection. You were guilty. [The defendant's] case was thrown out.

"[The Witness]: No, [my case] was thrown out."

[5] It became clear during Gary Fabricatore's testimony that Judge Hickey had presided over the prior breach of the peace case at issue.

[6] Despite Gary Fabricatore's insistence that the charge had been dismissed, the court, again, interjected:

"[The Witness]: I hope—if I talked up in there and everything what was heard on the state, mine should have been dismissed and my brother's—he had to pay a fine.

"The Court: You're wrong.

"[The Witness]: How could this be?

"The Court: You're wrong. That's how it can be."

that he discovered that the court had been mistaken about the breach of the peace charge against Gary Fabricatore. The charge, in fact, had been dismissed. Both the prosecutor and defense counsel agreed on a curative instruction for the court to read to the jury. Prior to the court's reading of the curative instruction, defense counsel stated: "Your Honor, for the record, I reviewed the curative instruction. It seems appropriate. It seems to address the issue at large." The court then told the parties that he was going to read the instruction to the jury and asked both counsel whether they were satisfied. Both counsel responded affirmatively.[7]

After the curative instruction, in which the court explained to the jurors that they were not to consider any allegations of a breach of the peace charge against Gary Fabricatore in their deliberations,[8] the court asked

[7] The following exchange took place before the judge read the instructions to the jury:

"[The Prosecutor:] Yes, Judge.

"The Court: You satisfied?

"[Defense Counsel]: Yes, Your Honor.

"The Court: Okay. . . .

"[Defense Counsel]: Thank you, Judge. We are all set then.

"The Court: Anything else?

"[Defense Counsel]: No, Judge.

"The Court: Absolutely, positively nothing else?

"[The Prosecutor:] Nothing, Judge.

"The Court: No more housekeeping?

"[The Prosecutor:] I think the house is clean, Judge.

"The Court: Okay.

"[Defense Counsel]: I think [the prosecutor] is a good housekeeper."

[8] The court instructed the jury as follows: "Before I begin in the ordinary course of jury instructions, I must instruct you on one item that there seemed to be confusion over yesterday during the testimony of a witness, Gary Fabricatore. The court was mistaken regarding the outcome of a breach of the peace charge regarding Gary Fabricatore and someone named DeLeo. That particular case was in fact dismissed.

"The law in Connecticut states that a dismissal results in erasure of that record and should be treated as if the person was never even arrested. The confusion apparently arose between separate incidents that the state's attorney was referring to during his cross-examination and the incident that Gary Fabricatore began to talk about on his own volition.

the defense attorney and the prosecutor whether they agreed with the instruction and offered them the opportunity to object. Both counsel agreed with the instruction.

The defendant requests review of his claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We are mindful, however, that in "the usual *Golding* situation, the defendant raises a claim on appeal which, while not preserved at trial, at least was not waived at trial. . . . [A] defendant [can] not satisfy the third prong of *Golding* where he had implicitly waived at trial a challenge to the alleged constitutional deprivation that was the basis of his claim on appeal. Therefore, a defendant cannot prevail under *Golding* on a claim that he implicitly waived at trial." (Internal quotation marks omitted.) *State* v. *Arluk*, 75 Conn. App. 181, 192, 815 A.2d 694 (2003).

In this case, defense counsel reviewed the curative instruction before it was read to the jury. The record suggests that defense counsel spoke with the prosecutor prior to the court's reading of the instruction and could have amended the instruction as necessary. More-

"Therefore, in order to clear up the confusion, any references to any breach of the peace charge should be stricken in your deliberations. This means that the state's attorney's reference to any breach of the peace arrest, the defense attorney's reference to any breach of the peace arrest, as well as Gary Fabricatore's references to any breach of the peace arrest. The only criminal conviction regarding Gary Fabricatore that you might consider in assessing credibility is the one felony charge that he admitted pleading guilty to. . . .

"[Y]ou must not infer anything or consider in any way, shape or form the reference to Gary Fabricatore's breach of the peace arrest a couple of years ago. It is completely irrelevant to these particular proceedings. This court was mistaken regarding its knowledge of that particular case, and you will not consider it at all. It shall be completely stricken from your deliberations.

"Also, any comments I made to Gary Fabricatore about this portion of his testimony should in no way affect your assessment of his credibility. I am striking that particular testimony from the record and am asking you to strike it as well. And this is a court order I am now suggesting."

over, defense counsel did not object or take exception. Instead, he explained that he was satisfied with the instruction. Therefore, we conclude that the defendant implicitly waived his claim, and we decline to afford it review.

IV

The defendant's fourth claim is that the court improperly instructed the jury on self-defense. Specifically, the defendant contends that the court's instruction regarding the duty to retreat was inappropriate because he did not use deadly force.[9] See *State* v. *Anderson*, 227 Conn. 518, 529, 631 A.2d 1149 (1993). Nevertheless, while we agree with the defendant that the court's instruction was improper, we do not believe that this improper instruction resulted in a harmful error that deprived the defendant of a fair trial.

The defendant seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged

---

[9] The relevant section of the court's self-defense instruction read as follows: "Now, the law recognizes an exception to the justification of the use of physical force as self-defense. Subsection (b) of General Statutes § 53a-19, insofar as it relates to this case, provides as follows. A person is not justified in using physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety by retreating. The law stresses that the defensive measures must never be retaliatory. The force used by a defensive force, not a reprisal or a punishing force. The law also says that if possible or feasible, the person attacked should retreat and get away from that person or place before standing his ground and returning force with force.

"So, if you find the claim of the defendant, you must ask yourself, did he take necessary defensive measures, the fending off of measures to protect himself? Or did he retreat or give ground or did he take some retaliatory measures or some stronger measures not reasonable in the light of that attack? In essence, how reasonable were the measures that he took?"

constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. We review the claim because the record is adequate and the claim is of constitutional magnitude.

The fundamental right of a defendant charged with a crime to establish a defense "includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." (Internal quotation marks omitted.) *State* v. *Whitford*, 260 Conn. 610, 619, 799 A.2d 1034 (2002). "Where, as here, the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict. . . . [It is a] well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts." (Citation omitted.) Id., 619–20.

Although the court suggested, by its instruction, that the defendant had a duty to retreat, "[i]t is generally agreed that one who can safely retreat is not required to do so before using nondeadly force . . . ." *State* v. *Anderson*, supra, 227 Conn. 529. Nevertheless, when the instruction is read as a whole, although it was not in strict accordance with General Statutes § 53a-19 (b), it presented the case to the jury in a manner so that no injustice resulted. See *State* v. *Quintana*, 209 Conn. 34, 47, 547 A.2d 534 (1988). When the "principal factual issues . . . [are] not classically dependant upon [the subtleties of the law of self-defense] for their proof"; id., 47–48; as is true in this case, the court's instruction on self-defense does not constitute reversible error. See id., 48.

As in *State* v. *Quintana,* supra, 209 Conn. 47, the only evidence presented on the issue of self-defense was the testimony of one witness. In this case, it was the testimony of Gary Fabricatore, the defendant's brother. He testified that the defendant was attacked by the victim and that the defendant, in an effort to defend himself, engaged in the physical altercation. That evidence was contradicted by several state's witnesses, who testified that the defendant attacked the victim after the victim urged the defendant to stop assaulting another individual. The credibility of those witnesses was weighed by the jury. "The jury's verdict [therefore] can fairly be read to indicate a choice between . . . two inconsistent versions of the [assault], a choice that accepted the version presented by [the state's witnesses'] testimony and rejected the self-defense version presented by [Fabricatore]." Id. Although we cannot speculate about the jury's decision, it is clear that the jury could have judged the testimony of the state's witnesses to be more credible. It appears that the jury may not have even needed the self-defense instruction to reach its verdict. We conclude that the court's erroneous instruction on self-defense did not, therefore, constitute harmful error in the circumstances of this case.

V

The defendant's final claim focuses on the court's decision to remand the defendant into custody pending sentencing, pursuant to General Statutes § 54-63f.[10] Spe-

---

[10] General Statutes § 54-63f provides in relevant part: "A person who has been convicted of any offense, except a violation of section 53a-54a [murder], 53a-54b [capital felony], 53a-54c [felony murder] or 53a-54d [arson murder] or any offense involving the use, attempted use or threatened use of physical force against another person, and is either awaiting sentence or has given oral or written notice of such person's intention to appeal or file a petition for certification or a writ of certiorari may be released pending final disposition of the case . . . ."

In addition to minor technical changes, Public Acts 2000, No. 00-200, § 5, which became effective October 1, 2000, added the language prohibiting the

cifically, the defendant contends that because our Supreme Court has determined that the 2000 amendment to that statute, which was applied to the defendant, was found to be unconstitutional; *State* v. *McCahill*, 261 Conn. 492, 520F, 811 A.2d 667 (2002) (en banc); he should be resentenced. We agree and remand the case to the trial court for further proceedings.

The following facts are relevant to the resolution of the defendant's claim. After the jury returned the verdict, the state argued that pursuant to § 54-63f, the court was prohibited from granting the defendant bond pending sentencing because his conviction involved the use of force. Despite some argument by defense counsel, the defendant's bond was revoked, and he was remanded to the department of correction pending sentencing. Seventy-two days later, the defendant was sentenced to eighteen months imprisonment, suspended after time served, followed by two years of probation. Nearly five months later, on November 13, 2002, the court granted the defendant's motion to stay probation.

The state argues that because the defendant was sentenced to time served, there is no practical relief that can be granted and his claim is moot. Nevertheless, "[t]he test for determining mootness is not [w]hether the [appellant] would ultimately be granted relief . . . . The test, instead, is whether there is any practical relief this court can grant the appellant." (Internal quotation marks omitted.) *In re Amelia W.*, 62 Conn. App. 500, 505, 772 A.2d 619 (2001). "If no practical relief can be afforded to the parties, the appeal must be dismissed." (Internal quotation marks omitted.) *Urbanowicz* v. *Planning & Zoning Commission*, 87 Conn. App. 277, 292, 865 A.2d 474 (2005). Although the state is correct that there is no remedy for the time that the defendant

release of a person convicted of "any offense involving the use, attempted use or threatened use of physical force against another person . . . ."

has already served, the imposition of probation is a collateral consequence that may be "prejudicial to the interests of the appellant . . . ." (Internal quotation marks omitted.) *State* v. *Collic*, 55 Conn. App. 196, 201, 738 A.2d 1133 (1999). We cannot predict whether our Supreme Court's determination that § 54-63f was unconstitutional might have impacted the defendant's sentence. The defendant might be granted practical relief through a resentencing that omits the term of probation. We therefore conclude that the defendant's claim is not moot.

Although the Supreme Court did not specify whether its ruling in *State* v. *McCahill*, supra, 261 Conn. 520F, that § 54-63f violated the separation of powers doctrine should apply retroactively, "[a]s a general rule, judicial decisions apply retroactively." (Internal quotation marks omitted.) *State* v. *Marsala*, 42 Conn. App. 1, 4, 679 A.2d 367, cert. denied, 239 Conn. 912, 682 A.2d 1010 (1996). A decision will not be applied retroactively only if "(1) it establishes a new principle of law, either by overruling past precedent on which litigants have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . (2) given its prior history, purpose and effect, retrospective application of the rule would retard its operation; and (3) retroactive application would produce substantial inequitable results, injustice or hardship." (Citation omitted; internal quotation marks omitted.) *Ostrowski* v. *Avery*, 243 Conn. 355, 378 n.18, 703 A.2d 117 (1997). The Supreme Court's determination that the statute was unconstitutional essentially restored to the trial court the discretion to allow a defendant to post bond even if the crime committed was violent. Given the effect of the court's decision, we cannot conclude that it satisfies any of the three prongs set forth in *Ostrowski*. We conclude that the court's decision in *McCahill* should be applied retroactively and that that therefore could

have an impact on the remainder of the defendant's sentence, namely, the two years of probation. We will not speculate as to the likelihood that the court would reverse the sentence imposed on the defendant; however, the court has the discretion to change its sentence.

The judgment is reversed only as to the sentence imposed and the case is remanded for resentencing. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.