## STATE OF CONNECTICUT *v.* MARK WAYNE
### (AC 19830)

Lavery, C. J., and Foti and Healey, Js.

Argued September 21—officially released November 14, 2000

*Norman A. Pattis*, with whom, on the brief, was *John R. Williams*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *David Gulick*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Mark Wayne, appeals from the judgment of conviction, rendered after a jury trial, of reckless endangerment in the first degree in violation of General Statutes § 53a-63,[1] threatening in violation of General Statutes § 53a-62[2] and breach of the peace in violation of General Statutes § 53a-181 (a) (3).[3] The trial court sentenced the defendant on each count to a term of two years, execution suspended after thirty days, with two years probation, concurrent, for a total effective sentence of two years, suspended after thirty days, and two years probation.[4] The defendant claims

[1] General Statutes § 53a-63 provides: "(a) A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person.

"(b) Reckless endangerment in the first degree is a class A misdemeanor."

[2] General Statutes § 53a-62 provides: "(a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or (3) he threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience.

"(b) Threatening is a class A misdemeanor."

[3] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (3) threatens to commit any crime against another person or his property . . . ."

[4] Reckless endangerment in the first degree and threatening are both class A misdemeanors punishable by a term not to exceed one year. See General Statutes § 53a-36 (1). Breach of the peace, as charged herein, is a class B misdemeanor punishable by a term not to exceed six months. See General Statutes § 53a-36 (2). The sentences as imposed are illegal. Neither party briefed nor raised the issue either at sentencing or on appeal. The judgment file, which is part of the record, revealed the impropriety.

that the court improperly instructed the jury regarding self-defense. We agree. The defendant also claims that the evidence was insufficient to sustain his conviction of any of the three charges. We disagree. We reverse the judgment of the trial court and remand the case for a new trial.

The jury reasonably could have found the following facts. On January 30, 1999, at about 7:30 p.m., the defendant observed a dog belonging to his neighbor, Robert Nearing, Jr., enter his yard, at which point the defendant's dog ran off to play with Nearing's dog. The defendant, who holds a valid state permit to carry a firearm and was armed with a .40 caliber handgun, followed the dogs into Nearing's yard. Upon observing Nearing, the defendant said to him, "Can you keep your fucking dog tied?" The reply was, "What's your fucking problem?" Nearing also told the defendant, "Drag your fucking ass. Go call the cops."[5] Nearing then called the defendant some profane names and punched the defendant in the head. When the defendant fell to the ground, his eyeglasses were knocked off his face and a lens popped out from the frame. The defendant then rose to his feet, withdrew his loaded handgun, pointed it at Nearing's head and said, "What do you think about this?" Nearing at first stood still and then walked away to call the police. The defendant, who was forty-one years old at the time, had undergone hip replacement surgery in 1992. Nearing was substantially larger than the defendant.

I

The defendant first claims that the court's jury instructions regarding self-defense were improper. The state and the defendant had filed requests to charge on self-defense. The state concedes, and we agree, that

---

[5] Nearing testified that the phrase "drag your ass" meant "get the fuck out of my yard."

the court's instructions were incorrect. The court improperly instructed the jury, in effect, that the act of pointing a loaded gun at another person constitutes a use of "deadly, physical force" as a matter of law. The state argues that the court should not have given a self-defense instruction because "the doctrine of self-defense was inapplicable, both as a matter of law and as a matter of fact." The defendant thus, according to the state's argument, received "a benefit to which he was not entitled." We do not agree.

Self-defense is a statutory defense pursuant to General Statutes § 53a-19.[6] The act of pointing a loaded handgun at another person fails to fit within the statu-

---

[6] General Statutes § 53a-19 provides: "(a) Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

tory definition of "deadly physical force" because it cannot "be reasonably expected to cause death or serious physical injury . . . ." General Statutes § 53a-3 (5). In addition to characterizing improperly the defendant's act of pointing the gun, the court improperly confined the jury's self-defense inquiry to determining whether the defendant was justified in using deadly physical force, that is, whether the defendant reasonably believed that Nearing was using or about to use deadly physical force on him or was inflicting or about to inflict great bodily harm on him.

The state argues that pointing a loaded handgun at someone involves no application of the use of physical force required to trigger the application of the self-defense statute, § 53a-19. The state claims that § 53a-19, which provides in relevant part that "a person is justified in *using* reasonable physical force upon another person to defend himself"; (emphasis added); requires an actual use and not merely a threat or show of force. The state further argues that although it requested a charge on self-defense, the facts did not warrant a self-defense instruction.[7] Alternatively, the state argues that even if the defendant can be said to have "used" force in pointing the loaded handgun, the use of force was not at issue because none of the offenses for which the defendant was convicted contains an element that is based on the use of force. The state posits that the court's deficient instructions were harmless and do not warrant a reversal of the judgment.

[7] Because we conclude as we do, we leave for another day the determination of whether the act of pointing a loaded gun constitutes the "use" of physical force. We recognize that a bizarre result would occur in concluding that it did not, i.e., to claim self-defense, one would actually have to make physical contact by shooting or striking another with the gun, rather than the obvious less violent act of merely pointing the weapon as a threat or show of force. The state argues that this inquiry is a question for the legislature, not the courts.

The defendant's fundamental right to present a defense includes a proper instruction, if such is required, on the elements of self-defense. *State* v. *Williams*, 25 Conn. App. 456, 463, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991). We review the charge as a whole to determine whether it presented the case to the jury so that no injustice would result. See *State* v. *Campbell*, 225 Conn. 650, 661, 626 A.2d 287 (1993).

Our review of the entire instruction leads us to conclude that it was likely to confuse or mislead the jury, thereby causing prejudice to the defendant. While we do not agree with the defendant that the improper instruction had the effect of directing a verdict for the state, in considering it from the standpoint of its probable effect on the jurors in guiding them, it was reasonably probable that they were misled. The jury understood from the instruction that the defendant had used deadly physical force by admittedly having pointed the loaded gun at Nearing. The defendant was thus greatly prejudiced, and the jurors were left with an improper knowledge of the law so as to make it almost impossible for them properly to apply the facts relevant to the charges. The jury could not fairly perform its extremely difficult task, and, therefore, a new trial is required.

## II

The defendant next claims that the evidence was insufficient to support his conviction of any of the crimes with which he was charged. We do not agree.

The standard for reviewing sufficiency of the evidence claims is well settled in this state. "When reviewing a sufficiency of the evidence claim, our courts apply a two-prong test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so con-

strued and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Foster*, 45 Conn. App. 369, 375, 696 A.2d 1003, cert. denied, 243 Conn. 904, 701 A.2d 335 (1997); see also *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994); *State* v. *Torres*, 47 Conn. App. 205, 219, 703 A.2d 1164 (1997); *State* v. *Roy*, 38 Conn. App. 481, 488, 662 A.2d 799 (1995), cert. denied, 237 Conn. 902, 674 A.2d 1333 (1996).

As to the crime of reckless endangerment in the first degree, the defendant claims that there was no evidence to show that he acted with extreme indifference to human life, that he acted recklessly or that he created a risk of serious physical injury to another person by pointing a loaded gun at Nearing. The defendant's argument lacks merit, as do his arguments dealing with the evidence supporting his conviction for threatening and for breach of the peace.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.