STATE OF CONNECTICUT *v.*
RONALD M. SINGLETON
(AC 25551)

Flynn, C. J., and Schaller and Dupont, Js.

Argued May 31—officially released September 26, 2006

*Kent Drager,* senior assistant public defender, for the appellant (defendant).

*Toni M. Smith-Rosario,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,*

state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant, Ronald M. Singleton, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[1] On appeal, the defendant claims that (1) the state failed to adduce evidence sufficient to disprove that he was acting in self-defense, (2) the trial court improperly instructed the jury on the issue of self-defense and (3) the court improperly instructed the jury on the elements of manslaughter. The defendant cannot prevail as to his first claim on appeal, but we determine that the court improperly instructed the jury regarding the degree of force used in self-defense, thereby depriving him of the right to present a defense. Accordingly, we reverse the judgment of conviction and remand the case for a new trial.[2]

From the evidence presented at trial, the jury reasonably could have found the following facts. The defendant and the victim, Leonard Cobbs, had used illegal drugs together. The victim purchased these drugs with the defendant's money. The defendant was angry that the victim had failed to reimburse him for his share of the drugs. On December 18, 2002, the defendant attempted to find the victim to collect this debt and traveled to both West Haven and New Haven in order to locate him. He eventually found the victim in the Newhall area of West Haven.

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

[2] In light of our resolution of this issue, we do not reach the third claim.

The two men spoke, and the defendant demanded that the victim pay him. The victim indicated that he did not have the money. The victim agreed to go to the defendant's apartment later that day to repay his debt of $180. After arriving at the apartment, the victim again informed the defendant that he did not have the money but offered to perform oral sex as an alternative means to settle the debt. The defendant rejected this proposal and became angry. The defendant then threatened the victim by stating: "Yo, I'll fuck you up." At approximately 6:45 p.m., a physical altercation between the two men commenced. The victim and the defendant moved around the room while engaged in this physical altercation. During this encounter, the defendant stabbed the victim several times with both a knife and a screwdriver.[3] The stab wound that caused the victim's death was seven and one-half inches deep, running from left to right, and was caused by a downward strike.[4] This wound penetrated the chest wall, a portion of the left lung, the pericardium and the heart, and the diaphragm, terminating in the liver. The length, depth and size of the wound all were consistent with having been caused by the knife blade.

The defendant did not call the police or paramedics immediately but, instead, disposed of the knife blade, which had broken off from the handle, and attempted to clean up the apartment. More than thirty minutes after the altercation had ended, at approximately 7:22 p.m., the defendant called his girlfriend, Victoria Salas. After arriving at the apartment, Salas attempted to revive the victim and called 911. At approximately 8:51 p.m., the defendant, using Salas' cellular telephone,

[3] The victim had three puncture wounds on the back of his head that appeared to have been caused by the screwdriver. The victim also had a nonfatal stab wound on his back.

[4] Arkady Katsnelson, a state medical examiner, testified that the victim could not have survived more than ten minutes after receiving this wound.

called the building maintenance supervisor, Richard McCann. McCann helped the defendant retrieve the knife blade that he had thrown down the garbage chute. At 9:06 p.m., Salas telephoned the police department, and officers arrived more than two hours after the fight. The officers discovered blood throughout the defendant's apartment. The knife had the victim's blood on it. The screwdriver had DNA from the victim on the handle, blood from the defendant on the shaft, and a mixture of blood on the tip with the defendant's DNA as the major contributor. One of the detectives observed that the defendant was bleeding from the middle of his chest and that there was a bloodstain on his shirt approximately the size of a fifty cent piece. This wound later was determined to have been caused by the screwdriver.[5]

The defendant raised the issue of self-defense at trial. The defense was premised on the defendant's version of the fight. The defendant testified that after he had asked the victim to repay him in the apartment, the victim became verbally aggressive and pulled out the screwdriver and threatened him. The victim then stabbed the defendant in the chest, and a struggle ensued. The defendant managed to disarm the victim, and they continued to struggle. Eventually, the victim grabbed the knife. The defendant managed to grab the victim's wrists, and, at some point, the knife went into the victim's body, ending the struggle. The jury rejected this defense and convicted the defendant of the lesser included offense of manslaughter in the first degree.[6] The court sentenced the defendant to a term of twenty

[5] The state argued that this wound was self-inflicted to support a claim of self-defense. In the alternative, the state contended that even if the victim had stabbed the defendant with the screwdriver, the forensic evidence indicated that this occurred *after* the defendant had stabbed the victim.

[6] The state had charged the defendant with murder in violation of General Statutes § 53a-54a.

years incarceration. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we identify certain legal principles applicable to our entire discussion. "Under our Penal Code . . . a defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt. . . . As these principles indicate, therefore, only the state has a burden of persuasion regarding a self-defense claim: it must disprove the claim beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hurdle*, 85 Conn. App. 128, 144, 856 A.2d 493, cert. denied, 271 Conn. 942, 861 A.2d 516 (2004); *State* v. *Knighton*, 7 Conn. App. 223, 231–32, 508 A.2d 772 (1986); see also General Statutes § 53a-12 (a).

General Statutes § 53a-19 (a) provides in relevant part that "a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." " 'Deadly physical force' means physical force which can be reasonably expected to cause death or serious physical injury . . . ." General Statutes § 53a-3 (5). We now turn to the specific claims raised by the defendant.

I

The defendant first claims that the state failed to adduce evidence sufficient to disprove that he was acting in self-defense. Specifically, he argues that the evidence was insufficient to prove beyond a reasonable

doubt that he was not justified in using the degree of force that he did.[7] We disagree.

As a preliminary matter, we note that in light of our resolution of the defendant's claim pertaining to the improper jury instruction, we will not address every claim that he has raised. Nevertheless, we must address the sufficiency of the evidence claim since the defendant would be entitled to an acquittal of the charge on which he claims insufficient evidence if he prevails on his claim. See *State* v. *Smith*, 73 Conn. App. 173, 178, 807 A.2d 500, cert. denied, 262 Conn. 923, 812 A.2d 865 (2002); see also *State* v. *Theriault*, 38 Conn. App. 815, 823 n.7, 663 A.2d 423 ("[a]lthough we find the defendant's [jury charge claim] dispositive, we must address the sufficiency of the evidence claim since the defendant would be entitled to an acquittal of the charge if she prevails on this claim"), cert. denied, 235 Conn. 922, 666 A.2d 1188 (1995).

The standard of review applicable to evidentiary insufficiency claims employs a two part test. "[W]e first construe the evidence most favorably to upholding the defendant's conviction, then ask whether a jury, upon the facts so construed and the reasonable inferences that follow, could have found the elements of [the crime] proven beyond a reasonable doubt. . . . In conducting our review, we are mindful that the finding of

---

[7] The defendant concedes that he failed to preserve this claim at trial but correctly argues that it remains reviewable by this court. The defendant failed to preserve his insufficiency of the evidence claim at trial and seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "[A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*." (Internal quotation marks omitted.) *State* v. *Pranckus*, 75 Conn. App. 80, 85, 815 A.2d 678, cert. denied, 263 Conn. 905, 819 A.2d 840 (2003). Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim. See id.

facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference." (Internal quotation marks omitted.) *State* v. *Sanchez,* 84 Conn. App. 583, 587–88, 854 A.2d 778, cert. denied, 271 Conn. 929, 859 A.2d 585 (2004); see also *State* v. *Chace,* 43 Conn. App. 205, 207–208, 682 A.2d 143 (1996). "Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) *State* v. *Fabricatore,* 89 Conn. App. 729, 733, 875 A.2d 48, cert. granted on other grounds, 275 Conn. 902, 882 A.2d 678 (2005).

We reiterate that "[s]elf-defense is raised by way of justification, and when such defense is asserted the state shall have the burden of disproving such defense beyond a reasonable doubt. . . . Whether the defense of the justified use of . . . force, properly raised at trial, has been disproved by the state is a question of fact for the jury, to be determined from all the evidence in the case and the reasonable inferences drawn from that evidence. . . . *As long as the evidence presented at trial was sufficient to allow the jury reasonably to conclude that the state had met its burden of persuasion, the verdict will be sustained.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Smith,* supra, 73 Conn. App. 183–84; *State* v. *Wilson,* 17 Conn. App. 97, 99, 550 A.2d 21 (1988).

A review of the record discloses that the evidence presented during the defendant's trial was sufficient to support the jury's finding beyond a reasonable doubt that the defendant was not acting in self-defense when he stabbed the victim. At the outset, we note that the jury in the present case was free to disbelieve the defendant's version of the events that resulted in the death

of the victim.[8] There was evidence before the jury that the victim owed the defendant money and that he twice failed to repay this debt. The defendant proceeded verbally to threaten the victim, who responded by offering to settle his outstanding financial obligation by performing oral sex. This proposal angered the defendant, and a physical fight ensued.

The victim died from a stab wound that was made with a downward motion and was 7.5 inches deep, cutting through the chest wall and several organs. The eight inch blade of the knife, therefore, was plunged into the victim's body nearly to the handle. There were several other nondefensive wounds on the victim's body. With respect to the defendant's chest wound, the jury heard evidence that the defendant did not start bleeding until after the victim had been injured. The jury reasonably could have found that the defendant, enraged by the victim's refusal to repay the drug debt and his offer of oral sex, attacked the victim, rather than crediting the defendant's testimony that they had struggled over the knife and that the victim had been injured in the process.[9] Additionally, the jury heard evi-

---

[8] In his brief, the defendant argues, citing *State* v. *Coleman*, 14 Conn. App. 657, 671–72, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988), that "[i]t is axiomatic under Connecticut law that, while a [trier of fact] may reject a defendant's testimony, a [trier of fact] in rejecting such testimony cannot conclude that the opposite is true. . . . Thus, under Connecticut law, the [trier of fact] is not permitted to infer, from its disbelief of the defendant's testimony, that any of the facts which he denied were true." (Citations omitted; internal quotation marks omitted.)

We agree with this general statement of the law, but disagree with its applicability to the present case. Simply put, the jury was free to credit the testimony of the other witnesses, as well as the medical and scientific evidence, to find that the state carried its burden of disproving the defendant's claim of self-defense. We further note that the defendant's credibility was impeached by the introduction into evidence of his four prior felony convictions. See *State* v. *Shabazz*, 246 Conn. 746, 761 n.11, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).

[9] The defendant testified that he did not know how the victim sustained wounds on his back and that he was unclear about how or at what point during their fight the victim sustained the deadly wound.

dence that the defendant disposed of the blade, only to retrieve it later, and attempted to clean up the crime scene. Finally, the defendant did not call the police or seek emergency medical attention for the victim for more than two hours after the stabbing.

On the basis of the evidence and the reasonable inferences drawn from it, we conclude that sufficient evidence was presented to disprove the defendant's claim of self-defense beyond a reasonable doubt.

## II

The defendant next claims that the court improperly instructed the jury on self-defense by removing from consideration by the jury the disputed factual issue of whether he used deadly or nondeadly physical force when defending himself.[10] We agree.

The defendant properly preserved his claim for review. "A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 93 Conn. App. 739, 752, 890 A.2d 591, cert. granted on other grounds, 277 Conn. 930, 896 A.2d 102 (2006); see also Practice Book § 42-16; *State* v. *Pereira*, 72 Conn. App. 107, 112, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003). The defense request to charge on self-defense sufficiently requested that the jurors be instructed on self-defense requirements applicable to both the use of nondeadly and deadly force as set forth in § 53a-19 (a).[11]

---

[10] The defendant also claims that the jury was charged improperly regarding the concept of initial aggressor in self-defense. We need not address this claim because our decision regarding jury instructions on the degree of force used in self-defense is dispositive. We cannot say that this initial aggressor question is likely to recur on retrial.

[11] The state contends that the issue was not preserved properly because the defendant did not take exception immediately after the charge was delivered. Although taking exception may have allowed the court to cure the defect; see *State* v. *Whitford*, 260 Conn. 610, 631–32, 799 A.2d 1034

We begin our analysis by identifying the legal principles germane to our discussion. "A fundamental element of due process is the right of a defendant charged with a crime to establish a defense." (Internal quotation marks omitted.) *State* v. *Adams*, 225 Conn. 270, 283, 623 A.2d 42 (1993). "An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Clark*, 264 Conn. 723, 729–30, 826 A.2d 128 (2003); see also *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995); *State* v. *Jimenez*, 228 Conn. 335, 339, 636

(2002); the issue is reviewable because the request to charge was sufficient on its own to preserve the matter for review. See Practice Book § 42-16 ("[a]n appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge *or* exception has been taken by the party appealing immediately after the charge is delivered" [emphasis added]); *State* v. *Carter*, 232 Conn. 537, 543 n.9, 656 A.2d 657 (1995).

Even if it had not been preserved, we would review this claim under *Golding*, as requested by the defendant. Under *Golding*, a defendant can prevail on an unpreserved claim "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

A.2d 782 (1994). "This fundamental constitutional right includes proper jury instructions on the elements of [self-defense] so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." *State* v. *Miller*, 186 Conn. 654, 660–61, 443 A.2d 906 (1982). "In reviewing the trial court's failure to charge as requested, we must adopt the version of facts most favorable to the defendant which the evidence would reasonably support." (Internal quotation marks omitted.) *State* v. *Miller*, 55 Conn. App. 298, 302, 739 A.2d 1264 (1999), cert. denied, 252 Conn. 923, 747 A.2d 519 (2000); *State* v. *Harrison*, 32 Conn. App. 687, 690, 631 A.2d 324, cert. denied, 227 Conn. 932, 632 A.2d 708 (1993).

The following additional facts are relevant to our resolution of this issue. The defendant's testimony about his encounter with the victim provided evidence of self-defense. He testified that the victim initiated the fight by stabbing him with a screwdriver. The defendant then grabbed the victim and forced him to drop the screwdriver. When the victim obtained the knife, the defendant again grabbed the victim's wrists. At some point, during this struggle, the knife was plunged into the victim's body, causing the mortal wound.[12]

On the basis of the defendant's testimony, the court instructed the jury on the use of deadly physical force in self-defense, but not on the use of nondeadly physical force in self-defense.[13] The court neither gave the jury

[12] In his testimony, the defendant specifically denied any intent to stab the victim and claimed that he was unclear as to how and at exactly what point the wound was inflicted.

[13] The court instructed the jury on self-defense as follows. "The defendant claims he acted in self-defense. In claiming that he acted in self-defense, the defendant is claiming that his use of *deadly physical force* was justified.

"*Deadly physical force* means physical force which can be reasonably expected to cause death or serious physical injury.

"Physical injury means impairment of physical condition or pain. Serious physical injury means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of any bodily organ.

instructions regarding the use of nondeadly force, nor

"Although the defendant raised the defense of justification, the state has the burden to prove beyond a reasonable doubt that the defendant was not justified in using *deadly physical force.*

"There are two circumstances under which a person is not justified in using *deadly physical force.* If the state proves beyond a reasonable doubt any one of these circumstances, you shall find that the defendant was not justified in using *deadly physical force.*

"Under the first circumstance, a person is not justified in using *deadly physical force* when at the time he uses *deadly physical force,* he does not reasonably believe the other person is about to use *deadly physical force* against him or about to inflict great bodily harm to him.

"In deciding whether or not the state has proved beyond a reasonable doubt that the defendant was not justified in using *deadly physical force,* you will first focus on the defendant. You first focus on what he, in fact, believed at the time he used *deadly physical force,* then you focus on whether the defendant's belief was reasonable under all the circumstances that existed when he used *deadly physical force.*

"Self-defense requires the jury to measure the justifiability of the defendant's actions based on what the defendant reasonably believed under the circumstances presented in this case and on the basis of what the defendant reasonably perceived the circumstances to be.

"The defendant's belief must have been reasonable and not irrational or unreasonable under the circumstances; that is, would a reasonable person in the defendant's circumstances have reached that belief? It is both a question of what his belief was and whether or not it was reasonable.

"The act of [the victim] leading to the defendant's use of *deadly physical force* need not be an actual threat or assault. The test is not what the other person actually intended, but whether the other person's act caused the defendant to reasonably believe was his intention. In other words, the danger need not have been actual or real.

"In judging the danger to himself, however, the defendant is not required to act with infallible judgment. Ordinarily, one exercising the right of self-defense is required to act instantly and without time to deliberate and investigate.

"Under such circumstances, it is often impossible to make an actual threat when none, in fact, existed. However, the defendant's belief of danger must be reasonable, honest and sincere. Apparent danger with the knowledge that no real danger exists is not an excuse for using any force.

"If you find [that] the state has proved beyond a reasonable doubt that the defendant did not, in fact, believe [the victim] was using or about to use *deadly physical force* against him or was inflicting or about to inflict grave bodily harm to him, the defendant's self-defense claim must fail.

"If, however, you find that the defendant, in fact, believed that [the victim] was using or about to use *deadly physical force* or was inflicting or about to inflict great bodily harm, you must then decide whether that belief held

instructed the jury that it needed to decide what degree of force the defendant used. The jury charge repeatedly addressed the defendant's use of deadly physical force, stating, for example, that "[i]f you decide [that] the defendant did not, in fact, believe he needed to use deadly physical force to repel the attack, your inquiry ends, and the defendant's self-defense claim must fail."

Our Supreme Court has stated: "[A] *defendant has no burden of persuasion for a claim of self-defense*; he has only a burden of production. That is, he merely is required to introduce sufficient evidence to warrant presenting his claim of self-defense to the jury. *State* v. *Lewis*, 245 Conn. 779, 810, 717 A.2d 1140 (1998) ([A]

by the defendant was reasonable under the circumstances. That is, would a reasonable person in the defendant's circumstances have reached that belief?

"If you find that the defendant's belief was reasonable from the perspective of a reasonable person in the defendant's circumstances, you must then decide whether the defendant reasonably believed that *deadly physical force* as opposed to a lesser degree of force was necessary to repel such attack.

"Determining the defendant's belief regarding the necessary degree of force requires that you, again, make two determinations. First, you must decide whether, on the basis of all the evidence presented . . . the defendant, in fact, believed that he needed to use *deadly physical force* as opposed to some lesser degree of force in order to repel the attack.

"If you decide [that] the defendant did not, in fact, believe he needed to use *deadly physical force* to repel the attack, your inquiry ends, and the defendant's self-defense claim must fail. If, however, you find [that] the defendant, in fact, did believe that the use of *deadly physical force* was necessary, you must then decide whether that belief was reasonable under the circumstances; that is, would a reasonable person in the defendant's circumstances have reached that belief?

\* \* \*

"Bearing in mind the instructions I have given you regarding justification, the state has the burden to prove beyond a reasonable doubt under the first circumstance, one, the defendant did not, in fact, believe that he was in imminent danger of *death or great bodily harm*; or, two, the defendant did not have a reasonable basis for his belief; or, three, the defendant did not, in fact, believe he needed to use *deadly physical force* to repel the attack; or, four, the defendant did not have a reasonable basis for his belief that he needed to use *deadly physical force* to repel the attack." (Emphasis added.)

defendant bears the initial burden of producing suffi-
cient evidence to inject self-defense into the case. . . .
This burden is slight, however, and may be satisfied if
there is any foundation in the evidence [for the defen-
dant's claim], no matter how weak or incredible . . . .).
*Once the defendant has done so, it becomes the state's
burden to disprove the defense beyond a reasonable
doubt. . . . Accordingly, [u]pon a valid claim of self-
defense, a defendant is entitled to proper jury instruc-
tions on the elements of self-defense so that the jury
may ascertain whether the state has met its burden of
proving beyond a reasonable doubt that the assault
was not justified.*" (Citations omitted; emphasis added;
internal quotation marks omitted.) *State* v. *Clark*, supra,
264 Conn. 730. In the present case, the defendant's
testimony satisfied this threshold requirement of meet-
ing the burden of production, and, accordingly, he was
entitled to a proper instruction on self-defense. The
state, therefore, had the burden of disproving beyond
a reasonable doubt all of the elements of self-defense.
See id., 733 n.10.

Our statutes distinguish between deadly and non-
deadly force used in self-defense. See General Statutes
§ 53a-19. Additionally, our Supreme Court has recog-
nized that when instructing a jury on self-defense under
§ 53a-19, there is a distinction between deadly and non-
deadly force. See, e.g., *State* v. *Whitford*, 260 Conn. 610,
631–32, 799 A.2d 1034 (2002); see also J. Pellegrino,
Connecticut Selected Jury Instructions: Criminal (3d
Ed. 2001) §§ 2.39-2.40, pp. 110–23. The state may defeat
a defendant's claim of self-defense involving deadly
physical force by proving, beyond a reasonable doubt,
*any* of the following: (1) the defendant did not reason-
ably believe that the victim was using or about to use
deadly physical force or inflicting or about to inflict
great bodily harm; or (2) the defendant knew that he
could avoid the necessity of using deadly physical force

with complete safety by retreating,[14] or surrendering possession of property to a person asserting a claim of right or by complying with a demand that he or she abstain from performing an act that he is not obligated to perform. See General Statutes § 53a-19. In other words, the General Assembly has created specific legislation that limits the use of deadly physical force in the context of self-defense when compared to the use of reasonable physical force. If the state can carry its burden of proof with respect to any of the enumerated situations previously set forth, the defendant's claim of self-defense using deadly physical force will fail. In contrast, the right to use reasonable physical force is, by legislative fiat, much broader in scope. In order to defeat a claim of self-defense through the use of reasonable physical force, the state must prove beyond a reasonable doubt that the defendant did not reasonably believe that he or she was subject to the use or imminent use of physical force and did not use a degree of force that was reasonable for that purpose. Simply put, it is much easier for the state to disprove self-defense when deadly physical force has been used.

The appellate courts of this state have recognized the importance of instructing the jury to consider whether the defendant used deadly or nondeadly force in the context of self-defense. A review of these decisions supports our conclusion in the present case. For example, in *State* v. *Miller*, supra, 55 Conn. App. 299, we reversed the conviction after the court refused to charge the jury with respect to the claim of self-defense. We concluded that the defendant was entitled to such a charge, no matter how weak or incredible the underlying evidence of self-defense. The court was obligated

[14] Retreat is not required if the defendant is in his or her dwelling, or in his or her place of work, and was not the initial aggressor, or is a peace officer or assisting a peace officer in the performance of the officer's duties. See General Statutes § 53a-19 (b).

to charge the jury with respect to self-defense after the defendant had met the low threshold of producing some evidence supporting his claim. Id., 301–304. In the present case, the defendant's testimony warranted an instruction on self-defense.

In *State* v. *Wayne*, 60 Conn. App. 761, 762–63, 760 A.2d 1265 (2000), we concluded that the defendant was entitled to a new trial as a result of an improper instruction. In that case, the court instructed the jury that the act of pointing a loaded gun at another person constituted deadly physical force as a matter of law. Id., 763–64. We stated that the court "improperly confined the jury's self-defense inquiry to determining whether the defendant was justified in using deadly physical force . . . ." Id., 765. We determined that the jurors were left with "an improper knowledge of the law so as to make it almost impossible for them properly to apply the facts relevant to the charges." Id., 766. As in the present case, the trial court in *Wayne* removed the issue of the level of force used by the defendant from determination by the jury and, as a result, that likely led to confusion of the jury and prejudice to the defendant.

In *State* v. *Anderson*, 16 Conn. App. 346, 354, 547 A.2d 1368, cert. denied, 209 Conn. 828, 552 A.2d 433 (1988), the defendant argued on appeal that the court instructed the jury that he had used deadly force and effectively directed a verdict on that issue. In that case, however, the trial court instructed the jury that "you may find that the knife was capable of causing serious physical injury or not." (Internal quotation marks omitted.) Id., 355. We concluded that, on the basis of the *entire* jury instruction, the court's instructions were proper. Id., 355–56. In the present case, however, the jury was not afforded the option of deciding whether the defendant's use of force was deadly or not; it simply

was told, in effect, that the defendant's actions constituted deadly force.

A similar situation occurred in *State* v. *Martinez*, 49 Conn. App. 738, 718 A.2d 22, cert. denied, 247 Conn. 934, 719 A.2d 1175 (1998). In that case, the defendant argued that the court failed to instruct the jury on the subjective-objective test of his claim on nondeadly force. Id., 746–47. We noted that the fatal flaw in the defendant's claim was the fact that the court issued a curative instruction at his request. Id., 749. The charge in its entirety, therefore, was proper. Again, in the present case, no such supplemental instruction was given to the jury.

Finally, in *State* v. *Whitford*, supra, 260 Conn. 610, the defendant claimed that the court instructed only on deadly physical force and "took from the jury the factual issue of what degree of force actually had been used, thereby implicitly endorsing the victim's version of the events and diluting the state's burden of proof." (Internal quotation marks omitted.) Id., 631. The defendant objected after the court instructed the jury, claiming that the degree of force used was a factual question reserved for the jury. Id. The state conceded that the instruction had been improper, and the court provided a curative, supplemental instruction. Id. The defendant specifically agreed to the court's offer to instruct the jury that "in determining whether or not deadly physical force was used is an issue for you the jury to decide." (Internal quotation marks omitted.) Id., 632–33. On appeal, the defendant's claim of instructional error failed due to his having agreed to the supplemental instruction. Id., 633.

Our review of these cases highlights the importance of instructing a jury to consider the factual question of whether a defendant's degree of force used in the context of self-defense constituted deadly or nondeadly

force. Of course, a criminal defendant has a constitutional right to have issues of fact decided by a jury and not by a court. *State* v. *Anderson*, supra, 16 Conn. App. 355; see also *State* v. *Hines*, 187 Conn. 199, 210, 445 A.2d 314 (1982). In this case, the issue of whether the defendant used deadly or nondeadly physical force presented a question of fact for the jury to decide. The court's instructions had the effect of foreclosing the jury's consideration of the factual question of whether the defendant, in fact, had used deadly force. Cf. *State* v. *Ortiz*, 79 Conn. App. 667, 679, 830 A.2d 802, cert. denied, 266 Conn. 933, 837 A.2d 806 (2003). The defendant testified that he grabbed the victim's wrists and that during this physical encounter, the knife ended up wounding the victim.[15] We cannot conclude, as a matter of law, that such actions constituted deadly physical force. The defendant was entitled to have the jury, rather than the court, make that factual determination. As our Supreme Court has stated, "an instruction that omits an element of a defense is constitutionally inadequate." *State* v. *Beltran*, 246 Conn. 268, 276, 717 A.2d 168 (1998). Simply put, the jury did not have the opportunity to consider the factual issue of whether the defendant used deadly or nondeadly physical force.

Furthermore, unlike in *Whitford* and *Martinez*, the jury was not given corrective measures such as curative instructions. Instead, the court, in effect, decided this factual issue by failing to instruct the jury on the theory of self-defense with nondeadly physical force and by making repeated explicit and implicit statements about the defendant's use of deadly physical force.[16] The effect

---

[15] "[A] defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ." (Internal quotation marks omitted.) *State* v. *Fuller*, 199 Conn. 273, 278, 506 A.2d 556 (1986); see also *State* v. *Havican*, 213 Conn. 593, 597, 569 A.2d 1089 (1990).

[16] For example, the court instructed that "[i]n claiming that he acted in self-defense, the defendant is claiming that *his use of deadly physical force* was justified." (Emphasis added.)

of limiting this issue was to provide the state with an easier route to disprove beyond a reasonable doubt the defendant's claim of self-defense. Had the jury been instructed to determine whether the defendant used nondeadly force, it could have found that the defendant's grabbing of the victim's wrists and the ensuing struggle constituted an appropriate level of force to repel the victim. The option never was afforded to the defendant. Instead, the court offered the jury four options to reject the claim of self-defense. The jury could find that (1) the defendant did not believe that the victim was about to use deadly force or inflict great bodily harm against him; (2) this belief was not objectively reasonable; (3) the defendant reasonably believed deadly physical force was necessary; and (4) this belief was objectively reasonable. In short, the improper instructions prejudiced the defendant by making it easier for the state to disprove the claim of self-defense.[17]

Our inquiry is not ended. We now turn to the question of harmlessness. "If an improper jury instruction is of constitutional magnitude, the burden is on the state to prove harmlessness beyond a reasonable doubt. . . . When a jury is misinstructed on an essential element of a crime and a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. *Rose* v. *Clark*, 478 U.S. 570, 579, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986). Further, a jury instruction that improperly omits an essential element from the charge constitutes harmless

---

[17] The state argues that the defendant is asserting conflicting defenses of accident and self-defense. We disagree because the defendant's claim that he neither intended nor used deadly physical force, but instead used nondeadly force that resulted in accidental death does not contain an inconsistency. Even if the jury could have interpreted his theory of defense as conflicting, however, he was still entitled to offer it as a matter of law. See *State* v. *Miller*, supra, 55 Conn. App. 300–301; see also *State* v. *Harris*, 189 Conn. 268, 273, 455 A.2d 342 (1983).

error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 166–67, 869 A.2d 192 (2005). We cannot conclude that the evidence in the present case was so overwhelming as to render the improper instruction harmless. The jury reasonably could have found that the defendant used nondeadly rather than deadly force in self-defense if instructed to consider that alternative. Cf. *State* v. *Corchado*, 188 Conn. 653, 668–69, 453 A.2d 427 (1982). The jury also should have been instructed to consider whether such use of physical force was reasonable under a theory of nondeadly self-defense. If the jury were to conclude affirmatively, which it reasonably could have done on the basis of the evidence presented, the result would have been different. See *State* v. *Wayne*, supra, 60 Conn. App. 766 (reasonably probable jury misled when deprived of opportunity to decide whether defendant had used deadly or nondeadly force). We conclude, therefore, that it was reasonably possible that the jury was misled by the court's charge, which precluded the jury from determining whether the defendant used nondeadly force in self-defense.[18]

The judgment is reversed and the case is remanded for a new trial on the charge of manslaughter in the first degree.

In this opinion the other judges concurred.

---

[18] In light of our conclusion that the court improperly instructed the jury with respect to whether the defendant had used deadly or nondeadly physical force, we need not address his claim that the court improperly instructed the jury on the definition of an "initial aggressor."