## STATE OF CONNECTICUT v. SADIKI BLAKE
### (AC 27694)

DiPentima, Harper and Dupont, Js.

Argued November 27, 2007—officially released June 10, 2008

*Mary Beattie Schairer*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, former state's attorney, and *Robin D. Krawczyk*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Sadiki Blake, appeals from the judgments of the trial court revoking his probation pursuant to General Statutes § 53a-32. The defendant claims that (1) the evidence did not support the court's finding that he had violated his probation and (2) the court violated his right to allocution.[1] We affirm the judgments of the trial court.

In August, 2001, the defendant was convicted on separate informations of two counts of sale of narcotics.

---

[1] The defendant also claims that, because he ultimately was acquitted of the crimes that gave rise to the violation of probation charges, he could not be found in violation of his probation. The merit of the defendant's claim was dependent on our Supreme Court's resolution of the issue raised in *State* v. *Durant*, 281 Conn. 548, 916 A.2d 2 (2007), which had not been released at the time that the defendant filed his principal appellate brief but was released thereafter. The defendant acknowledged at the time of argument before this court, and we agree, that *Durant* is dispositive and resolves this claim adversely to him.

The court imposed a total effective sentence of four years imprisonment, execution suspended, and four years of probation. In December, 2004, while the defendant was on probation, he was arrested on charges of attempt to commit murder, assault in the first degree, burglary in the first degree and criminal possession of a firearm. As a result of these charges, the defendant also was charged, in two informations, with violating the terms of his probation. The state later withdrew the charge of attempt to commit murder and, during the criminal trial, the court granted the defendant's motion for a judgment of acquittal with regard to criminal possession of a firearm. The court declared a mistrial as to the assault and burglary counts after the jury was unable to return a unanimous verdict with regard to those counts. The court subsequently held a hearing related to the violation of probation charges.

On the basis of evidence presented during the trial and at the hearing, the court revoked the defendant's probation and committed him to the custody of the commissioner of correction for four years. In its oral ruling, the court found that the state had presented reliable and probative evidence and had proven by a preponderance of the evidence that the defendant had violated his probation by committing the crimes of assault in the first degree and burglary in the first degree. Later, after a new trial, the jury found the defendant not guilty of those crimes. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence did not support the court's finding that he had violated his probation. We disagree.

"A trial court initially makes a factual determination of whether a condition of probation has been violated. In making its factual determination, the trial court is

entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 185, 842 A.2d 567 (2004); *State* v. *Fowler*, 102 Conn. App. 154, 165–66, 926 A.2d 672, cert. denied, 284 Conn. 922, 933 A.2d 725 (2007).

At the end of the adjudicative phase of the violation of probation hearing, the court set forth its findings, in relevant part, as follows: "The court credits the testimony of all the state's witnesses and finds that the evidence adduced at the violation of probation hearing was reliable and probative and established, by a preponderance of the evidence, that the defendant . . . on November 30, 2003, at 55 Oakland Terrace, Hartford, Connecticut, committed the crimes of assault in the first degree and burglary in the first degree and thus violated the first condition of probation, that is, that he not violate any criminal law of this state."

After noting the stipulation of the parties that the defendant was on probation at the time in question and was aware of the terms of his probation, the court stated: "The court finds that the testimony of La-Trice Grant was reliable and probative. The court credits her entire testimony. The court finds that the defendant went to Ms. Grant's third floor apartment at approximately 4:15 a.m. and knowingly and unlawfully entered and remained in her dwelling with the intent to commit a crime therein, that is, to assault Jimmy Ball, and that at that time, he was armed with a deadly and dangerous

instrument, that is, a gun . . . . Entering Ms. Grant's apartment at that time of morning when the defendant reasonably would have known that the occupants would be asleep and that he was armed with a handgun is strong evidence that the defendant intended to commit a crime in the apartment. The defendant entered and remained in Ms. Grant's apartment without permission.

"Once unlawfully in the apartment, the defendant approached Ms. Grant at the door of her bedroom and stated, 'I told you, anyone else but him.' The defendant proceeded to intentionally cause serious physical injury to Jimmy Ball by repeatedly hitting him about four times in the head and face with a gun, a dangerous weapon and dangerous instrument, while . . . Ball was asleep in Ms. Grant's bed. The defendant caused serious physical injury to Mr. Ball as stated by Dr. Manuel Lorenzo, who treated him at St. Francis Hospital and Medical Center, and as reflected in Mr. Ball's medical records . . . .

"The court credits the testimony of Lorenzo regarding the extent of Mr. Ball's injuries. Lorenzo testified that Mr. Ball had, among other injuries, a skull fracture, fracture to his cheekbone and traumatic brain injury. He also testified that without medical intervention, the injuries the defendant inflicted upon Mr. Ball would have caused his death. Accordingly, the court finds that the totality of evidence establishes that the defendant violated the conditions of probation by committing the crimes of assault in the first degree . . . and burglary in the first degree . . . on November 30, 2003, at the third floor apartment of Ms. Grant at 55 Oakland Terrace, Hartford, Connecticut."

A

Grant was the only witness who positively identified the defendant as the perpetrator of the crimes that

occurred in her residence on November 30, 2003.[2] The defendant argues: "[T]he lack of credibility of the sole witness who identified [him] as the assailant was so strong that the court's decision that her testimony was credible was not reasonable or logical and leaves one with the definite and firm conviction that a mistake has been committed and was thus clearly erroneous. Without that testimony, the evidence against the defendant was insufficient as a matter of law." (Internal quotation marks omitted.)

The defendant has set forth numerous reasons as to why the court should not have relied on Grant's testimony. First and foremost, he suggests that Grant intentionally misidentified him as the perpetrator of these crimes. The defendant asserts that Grant's trial testimony with regard to some points differed from that of other witnesses, as well as from her initial statement to the police, thus rendering it unreliable. The defendant also casts doubt on Grant's testimony insofar as it suggested as a motive that there was a "love triangle" between himself, Grant and Ball. The defendant posits that the version of events related by Grant "left a lot of unanswered questions" as to why he would have committed the crimes and what transpired at the scene after the crimes were committed. Finally, the defendant deems it relevant that the court declared a mistrial with regard to these crimes after the jury could not reach a verdict and that, later, a different jury found him not guilty of these crimes. The defendant states that these factors should give this court "reason to pause" and invites us to conclude that they reflect poorly on Grant's credibility as a witness.

We have reviewed Grant's testimony in its entirety. It suffices to observe that Grant unambiguously identified

---

[2] Ball testified that he remembered waking up in a hospital after the assault but was unable to recall any of the details of the assault itself.

the defendant as the man who entered her apartment, uninvited and armed with a gun, and attacked Ball. Grant testified that, as a result of their prior relationship, she was familiar with the defendant. She testified that she observed the defendant, heard the words he spoke to her and struggled with him in an unsuccessful effort to fend off his violent conduct. There was also evidence that, shortly after the incident, Grant identified the defendant to the police as the perpetrator and that, the following day, she identified him from a photographic array.

Grant's testimony amply supported the court's factual findings. The defendant does not claim that those findings, if reasonable, were insufficient to support the judgments. At trial, the defendant vigorously challenged Grant's credibility and attempted to discredit the state's version of events. Those efforts, reflected in the arguments raised before this court, are properly made before the trier of fact, not this court. It is not the function of this court to reevaluate the cold record of Grant's testimony to determine whether it was *plausible* that Grant was mistaken or, as the defendant asserts, had fabricated her testimony. "As the sole finder of fact in the probation revocation proceeding . . . the court was entitled to arrive at its own conclusion regarding the witnesses' credibility and what weight to afford their testimony." *State* v. *Gauthier*, 73 Conn. App. 781, 787, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003). None of the arguments raised by the defendant cast doubt on the propriety of the court's favorable assessment of Grant's testimony. The defendant's efforts to convince us that the court mistakenly relied on such testimony simply are not persuasive.[3]

---

[3] Contrary to the defendant's assertion, it is of no consequence to our analysis that one jury could not reach a verdict with regard to the underlying charges and that, later, another jury found him not guilty of these crimes. It suffices to observe that, unlike a criminal prosecution, in a violation of probation proceeding, the state has the burden of proving its case by a fair

## B

The defendant also argues that the trial court's statement that it "credits the testimony of all of the state's witnesses" should lead this court to conclude that it mistakenly assessed the evidence. The defendant posits that the court could not reasonably or logically have credited all of the testimony presented by the state because it "conflicted in many respects." The defendant accurately notes, for example, that the state's witnesses differed in their testimony with regard to who was present when the police arrived on the scene, where the victim was located when police arrived, the description of the crime scene, the nature of the relationship between Grant and Ball, whether there had been gunshots at the time of the incident and whether Grant had been "evasive" in her dealings with the police investigating the incident.

As a preliminary matter, we note that in reaching its decision, the court relied almost exclusively on Grant's observations of the defendant's violent criminal conduct in her apartment. The court expressly indicated in its decision that it had relied on Grant's "entire testimony." For these reasons, we question whether the defendant can demonstrate that his claim of error concerning other witnesses, if accurate, was of any consequence to the court's judgments.

Nevertheless, we reject on its merits the premise of the claim raised. The defendant would have us interpret in isolation the court's statement concerning the state's witnesses to mean that the court accepted as fact each and every detail recounted by all of the state's witnesses. In light of its statement concerning Grant's testimony, it is reasonable and logical to interpret the court's words to convey that the court had determined that all

preponderance of the evidence, not beyond a reasonable doubt. *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994).

of the witnesses presented by the state had testified truthfully and that it had relied on portions of the testimony of each of these witnesses. To the extent that they existed, inconsistencies in testimony between and among several witnesses do not necessarily reflect that any witness had testified untruthfully. Inconsistent evidence is not necessarily evidence that has been fabricated. Human experience teaches that different factors, such as varying abilities of witnesses to recall events, might reasonably and logically explain such inconsistencies. Further, it is fair to assume that the court relied on some of this testimony and, consistent with its role as fact finder, resolved any conflicts in the testimony to reach the logical version of events, which was amply supported by the evidence, that it articulated in its decision. "It is the [fact finder's] right to accept some, none or all of the evidence presented. . . . Moreover, [e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The court] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [finder of fact's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Marcisz*, 99 Conn. App. 31, 36, 913 A.2d 436, cert. denied, 281 Conn. 922, 918 A.2d 273 (2007). We are not persuaded that the court's general assessment of the state's witnesses in any way reflected that a mistake was made.

II

The defendant next claims that the court violated his right to allocution when it denied his request for a continuance of the dispositional phase of the violation of probation hearing. We do not reach the merits of this claim.

The following facts underlie the defendant's claim. On March 22, 2006, immediately after the conclusion

of the adjudicative phase of the hearing, the court took up the issue of the proper disposition of the violation of probation charges. The defendant's attorney informed the court that he "need[ed] time to prepare an argument for sentencing." The court granted a continuance until the following morning. The next day, the defendant's attorney addressed the court as follows: "I would like to formally object to proceeding with sentencing on the violation of probation. . . . As the court is aware, [the defendant], at this stage, in a violation of probation proceeding, has a right of allocution. . . . [T]he criminal charges upon which the violation is based have not been disposed of yet because of a mistrial. He also has an operative right against self-incrimination. To proceed, at this point, would cause or have the effect on [the defendant] of having to elect between those two rights. Frankly, with what is at stake in the two cases, that would, at least by my advice, cause him to waive his right of allocution. But I don't think he should be placed in that position and I, therefore, request that the court, again, consider not proceeding at this time and wait until the criminal charges are, in some manner, disposed of."

The court asked the defendant's attorney to elaborate with regard to his request. The defendant's attorney explained his concern that if, during allocution, the defendant wanted to express some remorse or responsibility for the criminal acts that formed the basis of the violation of probation charges, such statements could be viewed as incriminatory and be used against him during any new trial related to those charges. The court asked the defendant's attorney: "Well, how about if the court orders that whatever [the defendant] says can't be used against him at the trial?" The defendant's attorney responded that he would not feel comfortable advising his client to proceed on that basis "unless the prosecution joins in that."

The court responded: "The court does not feel that [the defendant] cannot speak because of the fact that the case is pending against him. There are many things he can say. And, certainly, if his position is that, I didn't do it, then that's something he should say if he wants to. There are a lot of things he can say without incriminating himself. So, if he doesn't want to speak on his own behalf, that's his right. He has the opportunity to do so." The defendant's attorney responded that the issue was not whether the defendant had an opportunity to address the court, but whether he was "free to fully exercise the right." After the colloquy between the defendant's attorney and the court concluded, the prosecutor stated: "If [the defendant] wants to show remorse by admitting his culpability on the underlying charges, I'll state on the record that I won't use that admission against him at the retrial of the criminal charges."

The defendant's attorney conversed briefly with the defendant, then stated: "[The defendant] has concerns now with the manner in which I'm handling his case. His concerns are that his probation officer should be here to speak to how he was otherwise doing on probation prior to the violation being lodged against him. And he is concerned by the court's findings in terms of there being a violation of probation, particularly with regard to the findings about him being in possession of a . . . gun, in light of the court's earlier granting of the motion [for a] judgment of acquittal [on the possession of a firearm charge]. It's his concern that that demonstrates some bias on the part of the court in terms of further hearing the matter."

The court addressed the defendant. The court stated that, because the violation of probation was based on his substantive offenses, testimony from the defendant's probation officer concerning other matters would be irrelevant. The court informed the defendant

that it was its role to make factual findings concerning his conduct and that he had a right to appeal from the court's decision. Finally, the court stated that the defendant's attorney "[had] done an excellent job" and that "he is certainly capable of proceeding" in this matter.

The following colloquy between the defendant and the court then occurred:

"[The Defendant]: I would like to address the court.

"The Court: All right. You should understand that anything you say can be used against you.

"[The Defendant]: Yeah, I understand that. First of all, I need a continuance for ample time to find better representation. I don't feel my lawyer has my best interest on hand. And, secondly, Your Honor, with all due respect to the court, I want to file an oral motion for you to recuse yourself on the grounds of bias and prejudice. And also I need copies of my transcript from the first day of my probation hearing.

"The Court: All right. Your request for a lawyer is denied. Your request that I recuse myself is denied as having not complied with the proper procedure of the rules. And what was the last one you said?

"[The Defendant]: I also needed a copy of the transcript of the first day of my probation hearing.

"The Court: That will be done for any appeal purposes. If you file an appeal, you'll get a transcript or your lawyer will get a transcript."

The court then invited the defendant's attorney to address the court with regard to sentencing. After the defendant's attorney addressed the court concerning that matter, the court stated to the defendant: "All right. Now . . . then, do you not want to say anything on your own behalf about sentencing?" The defendant

responded, "No." The court, noting that the "defendant [had] exercised his right not to be heard at sentencing," thereafter found that the beneficial aspects of probation were no longer being served, revoked the defendant's probation and imposed sentence.

The defendant reiterates the argument that he initially raised at trial, asserting that he had a right to allocution at the time of sentencing in this case but that the court deprived him of a "meaningful allocution" because "sentencing was held before the disposition of the underlying charges . . . ." The defendant argues that "because [he] was told that anything he said could be used against him, the fear that was instilled in him created an atmosphere that made it impossible for [him] to speak effectively and persuasively." The defendant also asserts, for the first time on appeal, that "[t]here are logistical benefits to deferring allocution until after disposition of the underlying charges." According to the defendant, if the state were to enter a nolle prosequi as to such charges or if he were ultimately acquitted of them, he could discuss such matters during allocution as part of a meaningful plea for mercy.

Absent an appellant's proper resort to an extraordinary means of review, "[this] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Practice Book § 60-5. "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *State* v. *Dalzell*, 282 Conn. 709, 720, 924 A.2d 809 (2007); see also *State* v. *Randolph*, 284 Conn. 328, 374, 933 A.2d 1158 (2007). "[O]ur rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a

path he rejected should now be open to him." (Internal quotation marks omitted.) *State* v. *Cromety,* 102 Conn. App. 425, 431, 925 A.2d 1133, cert. denied, 284 Conn. 912, 931 A.2d 932 (2007).

At trial, the defendant put forth several reasons why the court should not proceed with the dispositional phase of the proceeding on March 23, 2006. To the extent that the defendant argues that there were "logistical benefits" to continuing the proceeding so that he could discuss during allocution the final resolution of the pending charges, he failed to assert such ground at any time before the trial court. Thus, the claim for relief on this ground is unpreserved, and we decline to address it here.

A defendant's right to allocution applies to the dispositional phase of a violation of probation proceeding. *State* v. *Strickland,* 243 Conn. 339, 354, 703 A.2d 109 (1997). At trial, the defendant initially claimed that he could not exercise his right to allocution until the pending charges against him were resolved. Essentially, the defendant claimed that his right to allocution encompassed a right to speak absent any fear that what he said in allocution could be used against him during subsequent proceedings related to the pending charges. In this vein, the defendant's attorney clearly described what was, in his view, a tension that existed between the defendant's right against self-incrimination and his right to allocution. Responding to the distinct claim raised by the defendant and in an attempt to alleviate the concern expressed, the court suggested that it could "order" that any statements made by the defendant during allocution could not be used against him during another trial. In response, the defendant's attorney stated that he would not recommend such a course of action *"unless the prosecution joins in that."* (Emphasis added.) In response to this assertion, the prosecutor flatly stipulated that, if the defendant wanted to express

remorse or admit culpability with regard to the charges, "I'll state on the record that I won't use that admission against him at the retrial of the criminal charges."

The record reveals that the defendant's attorney expressed a specific concern that the court addressed. The court suggested a way to resolve the issue raised, and the defendant's attorney conveyed that his concern would be allayed if the state agreed not to use any statements made by the defendant during allocution against the defendant in another trial. After the prosecutor met this request, stipulating that any incriminating statements made by the defendant would not be used by the state during another trial, the defendant's attorney did not pursue the matter. The defendant's attorney did not ask the prosecutor to elaborate with regard to his stipulation, did not ask the court to address the matter in any greater detail and did not discuss further the issue of allocution. At no time did the prosecutor withdraw his stipulation, and the defendant never questioned it.[4] Instead, the defendant's attorney and, later, the defendant personally, raised other unrelated reasons why the court should grant a continuance.[5]

[4] In his reply brief, the defendant asserts that neither the court nor the prosecutor had the authority to "grant immunity to the defendant for statements made during his allocution after a violation of probation determination." The defendant further argues that, if such authority existed and was properly exercised, it nevertheless would have applied to admissions only, and not "other statements . . . of a personal nature which might have harmed him in other ways during the retrial." The defendant did not raise these concerns before the court, and, thus, they are not grounds preserved for appeal.

[5] As evidence that the court had infringed on or hampered his right to allocution, the defendant asserts that the court expressly warned him that anything he said could be "used against" him. Although the court did so advise the defendant, the record clearly reflects that the court made this statement when he indicated that he wanted to discuss issues related to his request for a continuance. The court did not make this statement in the context of allocution or when it invited the defendant to speak on his behalf prior to sentencing. Further, neither the defendant nor his attorney objected to the court's admonition or asked the court to explain it. Instead, after this statement was made, the defendant promptly addressed the court with

On this record, we must conclude that the issue pertaining to allocution initially raised by the defendant was timely addressed by the court and resolved in a manner consistent with his wishes. That the defendant ultimately did not exercise his right to allocute does not affect our analysis. Under these circumstances, it would be fundamentally unfair for the defendant to argue on appeal that such resolution of the issue raised was in any way prejudicial to him. Thus, we decline to review this issue in any further detail.

The judgments are affirmed.

In this opinion DiPENTIMA, J., concurred.

DUPONT, J., dissenting in part. I respectfully dissent from part II of the majority decision. Although I agree that the trial court correctly concluded that the defendant, Sadiki Blake, had violated the conditions of his probation, (1) I do not agree that we need not address the merits of his second claim, namely, whether the dispositional phase of his violation of probation hearing should have been continued in order to allow him to meaningfully exercise his right of allocution, and (2) I would address the merits of that claim and hold that because his right of allocution was impaired, he is entitled to another dispositional hearing, although not, as he has argued, before a different court.

The transcript of the sentencing or dispositional phase of the defendant's violation of probation hearing indicates that the defendant wanted "to formally object to proceeding with sentencing . . . ." His counsel stated that the defendant had "a right of allocution"

---

regard to issues unrelated to allocution, such as asking for a different attorney, for the trial judge to recuse herself and for transcripts of the proceeding. Thus, we are not persuaded by the defendant's assertion that the court's statement in any way was, or reasonably could have been interpreted to be, a limitation of his right to allocution.

and that the underlying charges of which he had been accused had not yet been disposed of because of a mistrial and that he was requesting the court "not [to proceed] at this time and wait until the criminal charges are, in some manner, disposed of." The court stated that "it's obvious here [that] you don't want him to be sentenced today, and that's the bottom line. If he has the right of allocution, if he doesn't want to exercise it, it's his right." Defense counsel responded: "But it's not a question of his ability to speak; it's a question of his ability to speak and be effective in it. . . . [T]he question is whether [the defendant] is fully able to exercise that right." The court stated that all the defendant was entitled to was the opportunity to speak. The state acknowledges in its brief that the defendant "requested a continuance until after the retrial of the underlying case in order to advocate meaningfully in mitigation of sentence, a continuance to find another attorney to represent him, that the court recuse itself on grounds of bias and prejudice and that he needed a transcript of the March 22, 2006 proceedings." The state claims that the defendant is asserting new bases for continuances on appeal that are unpreserved, namely, that at the time the motion was made, there was a possibility that the underlying charges pending against him "would be nolled or that he could be acquitted in the retrial of the underlying criminal charges."

I do not conclude from the colloquy at the dispositional phase of the defendant's revocation of probation hearing or from the defendant's brief that the defendant is making an argument not asserted at that hearing. At the hearing and on appeal, the defendant was, and is, claiming that his right to allocution was impaired and violated because the court refused to delay sentencing for the violation of a condition of his probation until after the disposition of the criminal charges underlying that violation. It is this question that is preserved for

our review, and I think the defendant is entitled to a review of it on the merits. The specific question that we must answer is whether Practice Book § 43-10 (3)[1] and decisions such as *State* v. *Strickland*, 243 Conn. 339, 703 A.2d 109 (1997), in light of the particular facts of this case, required a continuance of the dispositional phase of the defendant's revocation of probation hearing in order to preserve his right to a meaningful allocution.

Because I would review the defendant's claim on its merits, the question becomes what standard of review should be used. The defendant claims our review should be plenary because it is a question of law to be determined by an interpretation of Practice Book § 43-10 (3) and decisional law. The state claims that the standard of review is whether the trial court abused its discretion.

The difficulty involved in a resolution of which standard of review should apply in this case arises because a motion for a continuance traditionally involves the discretion of a trial court that will not ordinarily be disturbed absent a clear abuse of discretion; *State* v. *Fabricatore*, 89 Conn. App. 729, 734–35, 875 A.2d 48 (2005), aff'd, 281 Conn. 469, 915 A.2d 872 (2007); whereas the basis for the particular motion in this case was the exercise of a right, allocution, which is based on the rules of practice, as well as decisional law, a basis that ordinarily requires plenary review. The resolution of the question is further compounded by the fact that allocution is not a discretionary right to be given or withheld by a trial court but one that exists, as of right, tempered only by how and when the allocution is to occur. In this case, regardless of the standard of review applied to the defendant's claim that he was

[1] Practice Book § 43-10 (3) provides: "The judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence."

deprived erroneously of a continuance to assert his nondiscretionary right of allocution, the conclusion would, in my opinion, be the same. The defendant *was* denied a "reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence" as a matter of law under decisional law and Practice Book § 43-10 (3), and the denial was also an abuse of discretion.

The case of *State* v. *Bronson*, 55 Conn. App. 717, 740 A.2d 458 (1999), rev'd, 258 Conn. 42, 779 A.2d 95 (2001), is instructive. In that case, as in the present one, a motion for a continuance was denied. The basis for the motion was the need for a continuance to prepare for a hearing to be held pursuant to a statute, whereas in the present case, the need for the continuance is outlined in a rule of practice. The standard of review used in *Bronson* was abuse of discretion. The Appellate Court's decision that the motion for a continuance was denied properly was overruled by the Supreme Court in *State* v. *Bronson*, 258 Conn. 42, 779 A.2d 95 (2001), but nothing in the Supreme Court's decision casts doubt on the standard of review to be accorded a trial court's action on a motion for a continuance or on the factors involved in determining if discretion was abused. When the denial of the continuance is related to specific language of our rules of practice or a statute, as in *Bronson*, the question of whether there was an abuse of discretion includes whether the court correctly applied the law and reasonably could have concluded as it did. See *State* v. *Bronson*, supra, 739–40. The court's "discretion in granting or denying a request for a continuance should be exercised to accomplish the ends of substantial justice." *State* v. *Hamilton*, 30 Conn. App. 68, 83, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994). Factors involved in the ruling on a motion for a continuance include the likely length of the delay, the age and complexity of the case, prior continuances, the

impact of the delay on the participants in the trial, the perceived legitimacy of the reason for the delay, the defendant's responsibility for the timing of the request and the likelihood that a denial would substantially impair the defendant's rights. *State* v. *Bronson*, supra, 723. How a court balances the equities is discretionary but if, in balancing those equities, a trial court draws conclusions of law, our review is plenary. See *Wasko* v. *Manella*, 269 Conn. 527, 542–43, 849 A.2d 777 (2004).

The answer to the issue in this case is aided by a brief review of the right of allocution as preserved in decisions and Practice Book § 43-10 (3). *State* v. *Strickland*, supra, 243 Conn. 339, made it clear that in Connecticut, there is a right of allocution during a probation revocation proceeding. The historical underpinnings of the right are that a defendant has a right to make a statement to the court in his behalf and to present information in mitigation of sentence, which right relates back to at least 1689. Id., 343. The right preserves an opportunity to plead for mercy and to enable our system of justice to ensure that sentencing is particularized and reflects individual circumstances. Id. It is the defendant's opportunity to participate meaningfully in sentencing and to present a plea in mitigation of punishment. Id., 345.

Practice Book § 43-10 (3) provides that before imposing sentence, a judicial authority shall allow a defendant a reasonable opportunity to make a "personal statement in his or her own behalf and to present any information in mitigation of the sentence." The words of the rules of practice are interpreted in accordance with the same principles that guide interpretation of our General Statutes. *State* v. *Strickland*, supra, 243 Conn. 347. The right does not involve defense counsel's right to plead for mercy on behalf of his or her client, no matter how artfully. *Green* v. *United States*, 365 U.S. 301, 304–305, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961). A defendant must

personally be allowed the opportunity to address the court, which right is to be liberally construed. Id.

Revocation of probation is a possible continuing consequence of an original conviction in which probation was granted. A violation of probation hearing has two parts. The first concerns whether the defendant has violated his probation and the second, the punishment to be given to the defendant, in the event of a violation. *State* v. *Strickland,* supra, 243 Conn. 339. In this case, the court found that the defendant had violated his probation, a conclusion with which I agree, and revoked the defendant's probation, committing him to the custody of the commissioner of correction for four years, a conclusion with which I do not agree because the defendant was not afforded a continuance in order to assert his right to allocution meaningfully.

In the words of *Strickland,* allocution involves an "opportunity to meaningfully participate" in sentencing, with timing being an important element of the right. Id., 345. The right of the defendant to allocution should provide an opportunity for a defendant to provide significant facts relating to his sentencing. Such facts may include those that might affect punishment or the exercise of mercy. Id. We are not concerned here with whether the defendant had such a right but, rather, with the issue of when the right should be exercised in order to provide the defendant with meaningful participation in his sentencing, as outlined in *Strickland.* Although the fact that the jury eventually did not find the defendant guilty of the underlying charges that led to the hearing on the violation of probation is not necessary to conclude that a condition of probation was or was not violated, the jury's action *is* relevant to consider whether a defendant may be entitled to the mercy of the court when the court is considering the penalty to be imposed during the dispositional phase of a probation revocation hearing. Knowledge of the acquittal that

eventually resulted could affect the decision of a court as to whether to revoke probation, or its decision as to the amount of punishment the defendant should serve for the violation of probation, although it might not change the finding that he violated a condition of probation because of the different standard of proof between a criminal trial and a probation revocation hearing. See *State* v. *Durant*, 94 Conn. App. 219, 892 A.2d 302 (2006), aff'd, 281 Conn. 548, 916 A.2d 2 (2007).

The reason why the punishment to be given the defendant might be affected by the outcome of his future trial on the underlying charges is that the facts and circumstances of the case, including the defendant's motive, as elicited during the trial, could involve the degree of culpability of the defendant and whether the conditions of his probation continued to serve their original purpose. This is information that relates to his "reasonable opportunity to make a personal statement in mitigation of his sentence" as provided by the rules of practice. Allocution not only gives the defendant a right to participate in the sentencing process but the right to participate "meaningfully." *State* v. *Strickland*, supra, 243 Conn. 353. An adjective, such as "meaningful" implies that the important qualities of the noun modified are utilized in determining what "meaningful" means in the particular phrase. See *Household Finance Corp.* v. *Nival*, 37 Conn. Sup. 606, 612, 430 A.2d 1311 (1981). If a word such as "meaningful" has not yet been defined by our Supreme Court in a particular decisional context, we may refer to its dictionary definition. *State* v. *Bronson*, supra, 55 Conn. App. 728. "Meaningful" is defined in Webster's New World Dictionary (2d College Ed.) as "full of meaning, having significance or purpose."

A court is vested with broad discretion during the disposition phase of a revocation hearing. It could require the defendant to serve any or all of his remaining sentence or continue probation or modify or enlarge

its conditions. *State* v. *Strickland*, supra, 243 Conn. 353. I conclude that the denial of a continuance was improper, and another dispositional phase of the defendant's probation revocation hearing is required because the defendant was deprived of a meaningful right to allocution.

The defendant seeks a dispositional phase to be held before a different trial court in the event that he is entitled to another hearing. Although I would grant him a new dispositional hearing for the foregoing reasons, I would not remand his resentencing to a different judge, as he has argued should be done.

Remanding to a different trial court is an extraordinary remedy to be reserved for an extraordinary case. *United States* v. *Li*, 115 F.3d 125, 134 (2d Cir. 1997), citing *Sobel* v. *Yeshiva University*, 839 F.2d 18, 37 (2d Cir. 1988), cert. denied, 490 U.S. 1105, 109 S. Ct. 3154, 104 L. Ed. 2d 1018 (1989). Resentencing before a different judge is appropriate only when the original judge would have "substantial difficulty in putting out of her mind her previously expressed views, or where reassignment is advisable to preserve the appearance of justice." (Internal quotation marks omitted.) *United States* v. *Li*, supra, 134. In this case, reassignment would not be appropriate. The transcript of the hearing is devoid of any special circumstances that suggest that the trial judge would be unable to follow Practice Book § 43-10 (3) or unable to afford the defendant a fair resentencing.[2] We rely on the trial judge to give "careful consideration to any mitigating comments that [the defendant] might offer during her allocution." *United States* v. *Li*, supra, 134.

---

[2] In *State* v. *Strickland*, supra, 243 Conn. 354, the case was summarily remanded, without discussion, to a trial court other than the court that revoked the defendant's probation with direction to conduct another disposition phase of his probation revocation proceeding. Nothing in the decision itself, however, addresses the special circumstances that required that result.

I would set aside the judgments of revocation of probation and the sentence of the defendant and remand the case to the trial court for another dispositional phase of his probation revocation proceeding in order to afford him a meaningful right of allocution. The judgments that the defendant violated his probation should be affirmed.