STATE OF CONNECTICUT *v.* SADIKI BLAKE
(SC 18185)

Rogers, C. J., and Katz, Vertefeuille, Zarella and Schaller, Js.

Argued October 14—officially released November 25, 2008

*Mary Beattie Schairer*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robin D. Krawczyk*, senior assistant state's attorney, for the appellee (state).

KATZ, J. The defendant, Sadiki Blake, appealed to the Appellate Court from the judgments of the trial court revoking his probation pursuant to General Statutes § 53a-32 following his arrest on charges of attempt to commit murder, assault in the first degree, burglary in the first degree and criminal possession of a firearm.[1] The defendant raised, inter alia, various claims regarding the trial court's alleged violation of his right to allocution[2] when it denied his request for a continuance

---

[1] As we explain later in this opinion, the defendant ultimately was not convicted of any of these charges.

[2] The right of allocution is codified in Practice Book § 43-10 (3), which provides that prior to imposing a sentence, the trial court must "allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence." The right of allocution "has its origins in the ancient common-law practice of inquiring of every defendant if he had anything to say before sentence was imposed. The practice is so old that its precise origins are unknown, but, as early as 1689, it had become apparent that the practice was more than a mere formality; in fact, the right of allocution was considered important enough at that time to require reversal when the court failed to make the inquiry of a defendant. See *Anonymous*, 3 Mod. 265, 87 Eng. Rep. 175 (1689). Historically, the practice marked a critical juncture in criminal proceedings, as it afforded defendants the opportunity to inform the court as to the applicability of any of numerous recognized exemptions from the otherwise severe punishments imposed by the common law of the period. . . .

"The idea of permitting defendants an opportunity to request mitigated punishment was present in Connecticut's early jurisprudence. Chief Judge Zephaniah Swift described the practice as follows: The judge then demands of the prisoner if he has anything to say . . . . This is rather [a] matter of form, as all the legal means of defence have been previously exhausted: but the court will permit the prisoner to make any respectful remarks respecting his case in mitigation of his conduct . . . . 2 Z. Swift, A Digest of the Laws of the State of Connecticut (1823) p. 417. . . .

"Modern day justifications for preserving the practice focus on tailoring punishment to individual circumstances, providing an avenue through which a defendant may ask for mercy based on factors that might not otherwise be brought to the court's attention, and promoting safety, certainty and equity in sentencing and the judicial process overall." (Citations omitted; internal quotation marks omitted.) *State* v. *Strickland*, 243 Conn. 339, 343–45, 703 A.2d 109 (1997).

of the dispositional phase of the violation of probation hearing to wait for a final resolution of the underlying criminal charges.[3] *State* v. *Blake*, 108 Conn. App. 336, 345, 947 A.2d 998 (2008). Specifically, the defendant claimed that: (1) certain "logistical benefits" could have been available to him at that hearing depending on how the charges were resolved; and (2) the trial court had denied him meaningful allocution because any incriminating statements made by him expressing remorse or responsibility for the criminal acts that formed the basis for the violation of probation charges could have been used against him at his trial on the assault and burglary charges. Id., 349. The Appellate Court, in a two to one majority opinion, did not reach the merits of the defendant's logistical benefits claim, concluding that, because he had not raised that claim before the trial court, it was not reviewable. Id., 350. With respect to the defendant's other claim, the Appellate Court majority held that, in light of the fact that the state, in response to a request by the defendant's attorney, had agreed that it would not use any incriminating statements made by the defendant during trial on the criminal charges and the fact that the defendant's attorney did not address the matter further, the trial court timely had addressed this issue and resolved it in a manner consistent with the wishes of the defendant, who could not now claim that such resolution was prejudicial to him. Id., 350–52.

In this certified appeal,[4] the defendant claims that the Appellate Court should have considered and agreed

---

[3] The defendant also challenged the trial court's determination that the state had presented reliable and probative evidence and had proven by a preponderance of the evidence that the defendant had violated his probation by committing the crimes of assault in the first degree and burglary in the first degree, claims that the Appellate Court rejected. *State* v. *Blake*, 108 Conn. App. 336, 342, 344, 947 A.2d 998 (2008).

[4] We granted the defendant's petition for certification limited to the following issue: "Did the Appellate Court improperly decline to reach the merits of the defendant's claim that the trial court had violated his right to allocution

with his claim that the trial court improperly had refused to defer his sentencing on the violation of probation matter until after the disposition of his underlying criminal charges, and that the trial court's failure to grant him a continuance at the dispositional phase of his probation hearing eviscerated his right of allocution. He contends that, because the trial court would not grant his request for a continuance, his right to allocution was not meaningful. Although the defendant raises some interesting academic considerations, we conclude that his right to allocution was protected in this case and that he waived any ancillary concerns. Accordingly, we agree with the Appellate Court majority's decision.

The Appellate Court opinion set forth the following relevant facts and procedural history. "In August, 2001, the defendant was convicted on separate informations of two counts of sale of narcotics. The court imposed a total effective sentence of four years imprisonment, execution suspended, and four years of probation. In December, 2004, while the defendant was on probation, he was arrested on charges of attempt to commit murder, assault in the first degree, burglary in the first degree and criminal possession of a firearm. As a result of these charges, the defendant also was charged, in two informations, with violating the terms of his probation. The state later withdrew the charge of attempt to commit murder and, during the criminal trial, the court granted the defendant's motion for a judgment of acquittal with regard to criminal possession of a firearm. The court declared a mistrial as to the assault and burglary counts after the jury was unable to return a unanimous verdict with regard to those counts. The court subsequently held a hearing related to the violation of probation charges.

by denying his request for a continuance at the dispositional phase of the violation of probation hearing?" *State* v. *Blake*, 288 Conn. 914, 954 A.2d 185 (2008).

"On the basis of evidence presented during the trial and at the hearing, the court revoked the defendant's probation and committed him to the custody of the commissioner of correction for four years. In its oral ruling, the [trial] court found that the state had presented reliable and probative evidence and had proven by a preponderance of the evidence that the defendant had violated his probation by committing the crimes of assault in the first degree and burglary in the first degree. Later, after a new trial, the jury found the defendant not guilty of those crimes." Id., 338–39.

In connection with the defendant's claim that the trial court had violated his right to allocution when it denied his request for a continuance of the dispositional phase of the violation of probation hearing, the Appellate Court majority opinion set forth the following additional facts and procedural history. "On March 22, 2006, immediately after the conclusion of the adjudicative phase of the hearing, the court took up the issue of the proper disposition of the violation of probation charges. The defendant's attorney informed the court that he 'need[ed] time to prepare an argument for sentencing.' The court granted a continuance until the following morning. The next day, the defendant's attorney addressed the court as follows: 'I would like to formally object to proceeding with sentencing on the violation of probation. . . . As the court is aware, [the defendant], at this stage, in a violation of probation proceeding, has a right of allocution. . . . [T]he criminal charges upon which the violation is based have not been disposed of yet because of a mistrial. He also has an operative right against self-incrimination. To proceed, at this point, would cause or have the effect on [the defendant] of having to elect between those two rights. Frankly, with what is at stake in the two cases, that would, at least by my advice, cause him to waive his right of allocution. But I don't think he should be

placed in that position and I, therefore, request that the court, again, consider not proceeding at this time and wait until the criminal charges are, in some manner, disposed of.'

"The court asked the defendant's attorney to elaborate with regard to his request. The defendant's attorney explained his concern that if, during allocution, the defendant wanted to express some remorse or responsibility for the criminal acts that formed the basis of the violation of probation charges, such statements could be viewed as incriminatory and be used against him during any new trial related to those charges. The court asked the defendant's attorney: 'Well, how about if the court orders that whatever [the defendant] says can't be used against him at the trial?' The defendant's attorney responded that he would not feel comfortable advising his client to proceed on that basis 'unless the prosecution joins in that.'

"The court responded: 'The court does not feel that [the defendant] cannot speak because of the fact that the case is pending against him. There are many things he can say. And, certainly, if his position is that, I didn't do it, then that's something he should say if he wants to. There are a lot of things he can say without incriminating himself. So, if he doesn't want to speak on his own behalf, that's his right. He has the opportunity to do so.' The defendant's attorney responded that the issue was not whether the defendant had an opportunity to address the court, but whether he was 'free to fully exercise the right.' After the colloquy between the defendant's attorney and the court concluded, the prosecutor stated: 'If [the defendant] wants to show remorse by admitting his culpability on the underlying charges, I'll state on the record that I won't use that admission against him at the retrial of the criminal charges.'

"The defendant's attorney conversed briefly with the defendant, then stated: '[The defendant] has concerns

now with the manner in which I'm handling his case. His concerns are that his probation officer should be here to speak to how he was otherwise doing on probation prior to the violation being lodged against him. And he is concerned by the court's [finding] in terms of there being a violation of probation, particularly with regard to the findings about him being in possession of a . . . gun, in light of the court's earlier granting of the motion [for a] judgment of acquittal [on the possession of a firearm charge]. It's his concern that that demonstrates some bias on the part of the court in terms of further hearing the matter.'

"The court addressed the defendant. The court stated that, because the violation of probation was based on his substantive offenses, testimony from the defendant's probation officer concerning other matters would be irrelevant. The court informed the defendant that it was its role to make factual findings concerning his conduct and that he had a right to appeal from the court's decision. Finally, the court stated that the defendant's attorney '[had] done an excellent job' and that 'he is certainly capable of proceeding' in this matter.

"The following colloquy between the defendant and the court then occurred:

" '[The Defendant]: I would like to address the court.

" 'The Court: All right. You should understand that anything you say can be used against you.

" '[The Defendant]: Yeah, I understand that. First of all, I need a continuance for ample time to find better representation. I don't feel my lawyer has my best interest on hand. And, secondly, Your Honor, with all due respect to the court, I want to file an oral motion for you to recuse yourself on the grounds of bias and preju-

dice. And also I need copies of my transcript from the first day of my probation hearing.

" 'The Court: All right. Your request for a lawyer is denied. Your request that I recuse myself is denied as having not complied with the proper procedure of the rules. And what was the last one you said?

" '[The Defendant]: I also needed a copy of the transcript of the first day of my probation hearing.

" 'The Court: That will be done for any appeal purposes. If you file an appeal, you'll get a transcript or your lawyer will get a transcript.'

"The court then invited the defendant's attorney to address the court with regard to sentencing. After the defendant's attorney addressed the court concerning that matter, the court stated to the defendant: 'All right. Now . . . then, do you not want to say anything on your own behalf about sentencing?' The defendant responded, 'No.' The court, noting that the 'defendant [had] exercised his right not to be heard at sentencing,' thereafter found that the beneficial aspects of probation were no longer being served, revoked the defendant's probation and imposed sentence." Id., 345–49.

On appeal to the Appellate Court, the defendant reiterated his claim that he had a right to allocution at the dispositional phase of his probation violation proceeding but that the trial court "had deprived him of a 'meaningful allocution' because 'sentencing was held before the disposition of the underlying charges . . . .' " Id., 349. He argued that, "because [he] was told that anything he said could be used against him, the fear that was instilled in him created an atmosphere that made it impossible for [him] to speak effectively and persuasively." (Internal quotation marks omitted.) Id. The defendant also asserted, for the first time on appeal, that " '[t]here are logistical benefits to deferring allocu-

tion until after disposition of the underlying charges,' " specifically that, "if the state were to enter a nolle prosequi as to such charges or if he were ultimately acquitted of them, he could discuss such matters during allocution as part of a meaningful plea for mercy." Id.

The Appellate Court majority declined to review as unpreserved the defendant's claim regarding any such logistical benefits; id., 350; but reviewed his claim that he had been deprived of a meaningful exercise of his right to allocution because he feared that his statements could be used against him during the subsequent proceedings related to the pending charges.[5] Id., 350–51. On the basis of our review of that court's opinion, it is clear that certain fundamental precepts were in play: first, that although a motion for a continuance traditionally involves the exercise of the trial court's discretion that ordinarily will not be disturbed in the absence of clear abuse; *State* v. *Fabricatore*, 89 Conn. App. 729, 734–35, 875 A.2d 48 (2005), aff'd, 281 Conn. 469, 915 A.2d 872 (2007); the basis for the particular motion in this case was the exercise of a right—allocution—which is based on the rules of practice, as well as decisional law, and is not discretionary; and second, that a defendant's right to allocution applies to the dispositional phase of a violation of probation proceeding. *State* v. *Strickland*, 243 Conn. 339, 354, 703 A.2d 109 (1997). With these principles in mind, the Appellate Court majority concluded that, because the trial court had offered to order that any statements made by the defendant during allocution could not be used against him at his trial on the underlying criminal charges, the state had made a stipulation to that effect, and the defendant

---

[5] Thus, contrary to the way the issue for certification was framed; see footnote 4 of this opinion; the Appellate Court majority did not decline to reach the merits of the defendant's second claim, but, instead, rejected it on the merits, concluding that his allocution claim had been resolved in the trial court consistent with the concerns he expressed.

had failed to seek elaboration of either affirmation, the defendant's rights to allocution had been protected and any further review of his claims had been waived. *State* v. *Blake*, supra, 108 Conn. App. 352.

We agree with the Appellate Court majority's resolution of this case and embrace its reasoning.[6] "At trial, the defendant initially claimed that he could not exercise his right to allocution until the pending charges against him were resolved. Essentially, the defendant claimed that his right to allocution encompassed a right to speak absent any fear that what he said in allocution could be used against him during subsequent proceedings related to the pending charges. In this vein, the defendant's attorney clearly described what was, in his view, a tension that existed between the defendant's right against self-incrimination and his right to allocution. Responding to the distinct claim raised by the defendant and in an attempt to alleviate the concern expressed, the court suggested that it could 'order' that any statements made by the defendant during allocution could not be used against him during another trial. In response, the defendant's attorney stated that he would not recommend such a course of action 'unless the prosecution joins in that.' . . . In response to this assertion, the prosecutor flatly stipulated that, if the defendant wanted to express remorse or admit culpability with regard to the charges, 'I'll state on the record that I won't use that admission against him at the retrial of the criminal charges.'

"The record reveals that the defendant's attorney expressed a specific concern that the court addressed.

---

[6] To the extent that the defendant also claims that the state did not have the authority to grant him immunity pursuant to General Statutes § 54-47a, we have two responses: first, that issue was raised for the first time on appeal; and, second, although there is nothing in § 54-47a that would preclude its application to this scenario, it is clear that the state was not exercising its powers pursuant to that provision.

The court suggested a way to resolve the issue raised, and the defendant's attorney conveyed that his concern would be allayed if the state agreed not to use any statements made by the defendant during allocution against the defendant in another trial. After the prosecutor met this request, stipulating that any incriminating statements made by the defendant would not be used by the state during another trial, the defendant's attorney did not pursue the matter. The defendant's attorney did not ask the prosecutor to elaborate with regard to his stipulation, did not ask the court to address the matter in any greater detail and did not discuss further the issue of allocution. At no time did the prosecutor withdraw his stipulation, and the defendant never questioned it. Instead, the defendant's attorney and, later, the defendant personally, raised other unrelated reasons why the court should grant a continuance." Id., 350–51.

We agree with the Appellate Court majority that the issue pertaining to allocution raised by the defendant before the trial court was addressed timely by that court and resolved in a manner consistent with his wishes. As the state concedes to this court, the defendant would have had the right to hold the state to its promise not to use his statements against him at trial. See *State* v. *Rivers*, 283 Conn. 713, 732, 931 A.2d 185 (2007) ("[t]his court has held that the same concept of fairness that requires the state to keep the promises that it has made to induce a defendant's cooperation or guilty plea ordinarily impels the court, in its discretion, either to accord specific performance of the agreement or to permit the opportunity to withdraw the guilty plea" [internal quotation marks omitted]). We recognize that properly exercised, the right to allocution can be used effectively to influence a judge's discretion, and that, accordingly, the opportunity to allocate must be meaningful. In the present case, after the state's stipulation and the court's

representation, there is nothing to suggest that the defendant was not provided a full and fair opportunity to exercise that right.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.